MARY KAFKA, ADMINISTRATRIX, APPELLANT, v. UNION STOCK YARDS COMPANY, APPELLEE.

FILED JANUARY 5, 1907.    No. 14,550.

1. **Trial:** SPECIAL FINDINGS: MOTION FOR JUDGMENT. Where the special findings of a jury can be reconciled with the general verdict under any proof that might have been made under the issues, a motion for judgment on the special findings, and notwithstanding the general verdict, should be denied.

2. Special findings examined, and *held* not irreconcilable with the

general verdict, in view of the proof which might have been made under the issues, and insufficient to sustain the judgment.

3. **Verdict: EVIDENCE: REVIEW.** Whether the evidence in an action at law is sufficient to sustain the verdict, or special findings of the jury, must be brought to the attention of the trial court by motion for a new trial, and a ruling had thereon, before a review thereof can be had in this court.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Reversed.*

*S. A. Searle* and *J. L. Kaley,* for appellant.

*M. A. Hall* and *F. T. Ransom, contra.*

ALBERT, C.

Mary Kafka, as administratrix of the estate of James Kafka, deceased, brought an action against the Union Stock Yards Company of Omaha, Limited, to recover damages for the death of her husband, alleged to have been caused by the negligence of the defendant. The petition, among other allegations, contains the following :·

"Fourth. That on or about the 24th day of February, A. D. 1903, at about 12 o'clock, noon of said day, the said James Kafka, deceased, then in full life, and good health, was walking east on the sidewalk on the south side of, and on and along the said Q street, in the said city of South Omaha, at the aforesaid point, where the said street is crossed by said railroad tracks, built alongside of said Swift & Company's office building (when without his fault or neglect), the defendant by its servants, in the charge and control of a locomotive engine, and cars thereto attached, of the defendant then on the said railway, near to the point aforesaid, so negligently, carelessly, and unskilfully moved said engine and cars on and along the said railroad track, and in the direction of the point aforesaid, that the said engine and cars were by the negligent, careless and unskilful act of said servants, in the management of said engine and cars, run against the said James Kafka, deceased, who was by the said negligence,

carelessness and unskilfulness of the said servants afore-said, then and thereby with great force and violence knocked to the ground, onto the rails and track of said railway, and under the footboard of said engine, with his neck and face and side and body upon the rails of said track, pushed and dragged along, about the space of 20 feet, then and thereby breaking and crushing and bruising the ribs and shoulder and body of said James Kafka, deceased, and bruised and injured him, the said James Kafka internally, and that by reason of the said striking and bruising and crushing, and injuries to the body of him, the said James Kafka, so by him received at the hands of said defendant and its said employees in the said management of its said engine and cars, the said James Kafka languished, mortally sick, for the space of three days, and died as the result of said injuries and the sickness caused thereby on the 27th day of February A. D. 1903.

"Fifth. That the defendant and its employees aforesaid were especially negligent, and guilty of extreme negligence, in approaching said crossing; at the time they struck and injured the said James Kafka, as aforesaid, in the manner in which they did, at a high and dangerous rate of speed, to wit, while running at the rate of at least 15 miles an hour, and without sounding or blowing the whistle of said engine, and without ringing the bell thereon, or giving any notice or warning whatever of the approach thereof till within about two or three feet of the said crossing where they struck the said deceased, and at a time of day when there were large numbers of people crossing said street and tracks at that point, and without using ordinary and necessary and proper precautions for the safety of said deceased and other pedestrians at that point, in not placing, having or maintaining any watchman at said street crossing to warn him and others of the approach of its said engine and cars, which precautions were in this instance and at that time made all the more necessary from the fact that great and constant noise prevailed at said

crossing, and the said tracks at that point are hidden and obscured by a high tight board fence, and high tight board gates, across said tracks and along the same, about the height of 10 feet or more, and that said track is close to the side of the said office building of said Swift & Company, a two story building, that abuts upon said street at that point, shutting off the view of deceased and others approaching thereto from the west, that being the direction, to wit, from west to east, which said deceased was walking along said street at the time said injuries were inflicted by defendant, and that by reason of said failure of said defendant to use said necessary and proper precautions, and by reason of their said failure to have a watchman at that point to warn deceased and others of its approaching engine aforesaid, and by reasons of said defendant's negligence and failure to use proper care and precautions as aforesaid, all of which said conditions were well known to defendant, and had been in that condition for a long time prior to said 24th day of February, A. D. 1903, the said injuries causing his death as aforesaid were inflicted upon the deceased without fault upon his part, contributing thereto."

The answer admits that the intestate was injured by being struck by an engine belonging to the defendant at the time and place alleged in the petition, but denies that such injury was the result of any negligence on the part of the defendant, but that it was wholly due to negligence on the part of the intestate in attempting to cross its tracks immediately in front of a moving engine. The reply is a general denial. A large amount of evidence was taken, and in addition thereto the jury were permitted to view the *locus in quo*.

The cause was submitted to the jury with instructions to find a general verdict in favor of one or the other parties, and also to answer certain interrogatories submitted at the request of the defendant. A general verdict was returned in favor of the plaintiff. The interrogatories submitted, with the answers thereto as returned by the

jury, are as follows: "(1) When James Kafka reached the point five feet west of the west rail of the track upon which he was injured, how far could he have seen an engine approaching from the south on that track? Answer. 100 feet. (2) At the time that James Kafka stepped upon the track, how far south of that point was the engine which afterwards struck him? Answer. About 1 foot. (3) When James Kaafka was within five feet of the west rail of the west track, how far south of that point was the engine which afterwards struck him? Answer. 21 feet." The defendant then moved for judgment on the special findings of the jury, notwithstanding the general verdict. The motion was sustained, and judgment given accordingly. The plaintiff appeals.

We do not think the judgment of the district court can be sustained. It is well settled that where the special findings can be reconciled with the general verdict, under any proof that might have been made within the issues, a motion for judgment on the special findings, notwithstanding the general verdict, should be denied. *Lockwood v. Rose*, 125 Ind. 588; *Odell. v. Brown*, 18 Ind. 288; *Diamond Plate Glass Co. v. DeHority, Adm'r*, 143 Ind. 381; *Salander v. Lockwood*, 66 Ind. 285, and cases cited. This court held that to entitle a party to judgment on the special findings of the jury, where the general verdict is against him, such findings must establish all ultimate facts from which his right to a judgment results as a necessary legal conclusion. *Omaha Life Ass'n v. Kettenbach*, 55 Neb. 330. See, also, *Schlageck v. Widhalm*, 59 Neb. 541; *Citizens Nat. Bank v. Wedgwood*, 45 Neb. 143; *Williams v. Eikenberry*, 22 Neb. 210; *Krundick v. Chicago & N. W. R. Co.*, 90 Minn. 260. The most that can be said of the special findings is that, if the deceased had looked in the proper direction when he was within five feet of the track, he could have seen the approaching engine in time to have avoided the catastrophe. But that does not of itself convict him of contributory negligence. In *Chicago, B. & Q. R. Co. v. Pollard*, 53 Neb. 730, the duty

of a person approaching a railway crossing to look and
listen for an approaching train was under discussion, and
this court said: "When the view of the road is so ob-
structed as to render it difficult to see an approaching
train, the question whether a traveler was wanting in due
care is one for the jury to determine; and it is also a
question for the jury under complicated circumstances,
calculated to deceive and throw the traveler off his guard.
Beach, Contributory Negligence (2d ed.), sec. 195. It was
not for the trial court, and is not for this court, to de-
termine and say as a matter of law just at what exact point
in the plaintiff's approach to the railroad he should have
looked in either direction on the track for a train, or just
at what instant he should have looked in either direction
for the same purpose. The question was, did he, under
his surroundings and all the circumstances, observe the
care which ordinarily would have been taken by a prudent
person?"

The conditions which prevailed at the crossing, at the
time the injury occurred, are described in that portion
of the petition heretofore quoted. It there appears that
the crossing was on a busy street of a populous city;
that the tracks were obstructed by a high and tight board
fence and a building owned by the defendant; that loud
noises prevailed which were calculated to distract the
attention of pedestrains crossing the tracks, and other
conditions which might excuse a person intending to
cross the track for a failure to maintain a constant look-
out in any one direction. As was said in the *Pollard* case,
neither the district court, nor this court, has a right to
say, as a matter of law, that because the deceased failed
to look in the proper direction when he was within five
feet of the track he was guilty of such contributory negli-
gence as would preclude a recovery. The negligence of
the defendant, as well as every other fact essential to
a recovery on the part of the plaintiff, is conclusively
established for present purposes by the general verdict.

13

Granting that the facts found by the special findings are true, they are not necessarily irreconcilable with the general verdict. They are not ultimate facts, but evidential facts, which the jury had a right to weigh, and presumably did weigh, in connection with all the other facts and circumstances shown in evidence, in arriving at the general verdict.

A considerable portion of the argument on this case is devoted to a discussion of what the evidence shows or fails to show. The sufficiency of the evidence, either to sustain the general verdict or the special findings, is a question not presented by this appeal. As was said in *Stevens v. Logansport,* 76 Ind. 498: "In considering whether the facts specially found are irreconcilable with the general verdict, no reference can be made to the evidence actually adduced on the trial. The question to be decided is not whether, in the light of the evidence adduced, the general verdict is inconsistent with the facts found; the remedy in case of such an inconsistency is a new trial."

For the insufficiency of the special findings to sustain the judgment, it is recommended that the judgment of the district court be reversed and the cause remanded for further proceedings.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.