CHARLES L. BUEL ET AL., APPELLEES, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, APPELLANT.

FILED APRIL 23, 1908. No. 15,373.

1. Appeal: QUESTIONS FOR JURY: VERDICT. In an action against a railroad company for damages to crops and live stock resulting from high water alleged to have been caused by the negligent construction of an embankment and changing the course of the flow of water in a stream on plaintiff's land, the two principal questions involved were as to the nature and extent of a rainstorm which caused the increase of the flow of water down the streams, whether the rainfall was of such magnitude as could not have reasonably been anticipated and therefore the injury should be attributed to the act of God, or whether the alleged damage was caused by the negligent construction of the embankment and damming of the stream. The evidence upon both propositions was somewhat conflicting. They were submitted to the trial jury under proper instructions. *Held*, That the questions were for the jury to decide, and on review the verdict thereon was final.

2. Waters: RAILROADS: EMBANKMENTS: BURDEN OF PROOF. In such a case, the defendant requested the court to instruct the trial jury that, where the answer of the defendant contained a denial of negligence in the construction of the embankment and damming the stream and changing the watercourse, the burden of proof was

Buel v. Chicago, R. I. & P. R. Co.

"upon the plaintiff to show by a preponderance of the evidence that the rainfall was not unprecedented and so unusual as not to have been reasonably contemplated at the time of the construction of the embankment." The court refused to give the instruction. *Held*, No error; the burden being upon the defendant to maintain the defense.

3. Trial: INSTRUCTIONS. The railroad of defendant was constructed across plaintiffs' farm in 1892, 1893. There were two streams, upon the land, which were crossed by the railroad; suitable pile bridges being placed across each stream. The distance between the streams was about one-fourth of a mile. In 1898 both bridges were removed, one of the streams filled up so as to effectually dam the water, and a new channel was cut along the upper side of the railroad track, changing the flow of water into the other stream above the railroad, and a new bridge, much smaller in capacity than either of the former ones, was constructed across the stream carrying the combined flow of both. No complaint was made by plaintiffs as to the construction or capacity of the former bridges. In 1902, during or after a heavy rainfall, the opening at the new bridge was of insufficient capacity to permit the water to pass, and the land above the embankment was overflowed and the crops and property of plaintiffs were destroyed. The action was founded upon the alleged negligence of the defendant in closing the one stream, the increased height of the embankment, and the failure to provide a sufficient outlet for the accumulated water. The defendant requested the court to submit to the jury the question as to whether the changes made in the embankment in 1898 were skilfully and carefully or negligently and carelessly made. The court properly refused to so instruct, as there was no issue of that kind before the jury upon which the court had not given suitable instructions.

4. Appeal: SPECIAL FINDINGS: DISCRETION OF COURT. "The submission of questions to the jury for special findings is a matter within the discretion of the trial court, and the submission or refusal to submit such questions will not be reviewed except for abuse of discretion." *Reed v. McKill*, 41 Neb. 206.

5. Damages. The evidence showed a loss to the plaintiffs of 35 acres of oats of the value of $240, 15 acres of wheat in the shock of the value of $120, 85 acres of corn of the value of $680, besides meadow land and some live stock. *Held*, That a verdict finding damages, including interest, to be $663.33 was not excessive.

6. ———: INTEREST. "Where property is destroyed by the negligence of another, the owner will be entitled to interest on the value of such property from the time of its destruction." *Fremont, E. & M. V. R. Co. v. Marley*, 25 Neb. 138.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*M. A. Low, Billingsley & Greene, P. E. Walker, P. F. Greene* and *E. P. Holmes,* for appellant.

*Charles O. Whedon, contra.*

REESE, J.

This is the second time this cause has appeared in this court. The case upon the former hearing is reported in 76 Neb. 420. The action is for damages alleged to have resulted to the growing crops of plaintiffs, caused by the damming up and changing of a watercourse on the land of plaintiffs by an embankment created for defendant's railroad track. Two streams, referred to as the North and South Forks of Salt creek, pass through plaintiff's land, forming a junction below or after passing beyond plaintiff's boundary line. At a point where it is claimed the cause of damage to plaintiffs was located the distance between the two streams was approximately a quarter of a mile. In 1893 the defendant constructed its railroad across plaintiffs' land, crossing the streams at the points designated, constructing a pile bridge across the north fork some 200 or more feet in length, thus, as is claimed, allowing ample room for the passage and flow of the stream under the bridge. A similar bridge was constructed across the south fork about 150 feet in length, thus providing ample space for the flow beneath the bridge of the south fork. In 1898 the bridge across the north fork was taken out, the creek bed filled, and a new channel cut along the west or upper side of the railroad track, diverting the water from the north to the south stream, causing it to empty into the south stream just above the bridge. The 150-foot pile bridge was taken out, and a steel bridge about 90 feet long, resting upon concrete abutments, substituted in its stead. The em-

bankment extending from one stream to the other was some 20 or 25 feet in height, leaving no other escape of the water for both streams than under the steel bridge above referred to. The land just above the embankment and bridge was farm land owned by plaintiff Buel and leased to plaintiff Willi, the rent to be paid by a division of the crops and of the income from raising live stock. It is alleged by plaintiffs that in the month of July, 1902, the water of these two streams was, by reason of the inadequate opening in defendant's railroad grade, dammed and backed up over and upon plaintiffs' farm, destroying the growing crops and some of their live stock thereon. The petition contains the usual averments required in such cases. The answer admits the construction of the railroad bed and grade substantially as above set forth; denies all negligence in the construction of the grade and changing the channel of the north stream, or that plaintiffs' loss, if any, was in any way attributable to any act of the defendant; and alleges that the rise of the water in the creeks and the flooding of plaintiffs' land, if so flooded, was caused by an unprecedented storm and rainfall which could not have been anticipated nor guarded against, and was due to the act of God, and no want of care on the part of defendant. The statute of limitations is pleaded, and a general denial is set up. The reply consists of a general denial. The trial resulted in a verdict and judgment in favor of plaintiffs, and from the judgment defendant has appealed.

There seems to be no question but that defendant's railroad was constructed as above stated and as claimed by plaintiffs. It may also be said that the flood of water coming down the two streams was unusually great, and that the property of plaintiffs was destroyed to at least the extent of the amount named in the verdict and judgment. The principal questions submitted to the jury were as to the nature and extent of the storm and flood, that is, whether they should be classed as what is known in

law as the act of God and for which defendant could not be held liable, and whether the changing of the course and flow of the north stream and the closing of the old channel should be classed as a negligent act; in other words, whether the provision made for the escape and flow of the water through the one channel and under the one bridge, of smaller capacity than either one of the two as originally constructed, was such a provision for the escape of the water as would protect the property of plaintiffs from damage from such floods and high water as might have been reasonably expected, judging by the topography of the country and the past history of the streams. These questions were submitted to the jury upon more or less conflicting testimony, and were for its determination. It could serve no good purpose to set out the evidence upon the two propositions, for it is thought this statement will be conceded to be correct.

Upon the trial the court upon its own motion gave 15 instructions to the jury. The defendant requested the giving of 13 others, all of which the court refused to give. All instructions given were excepted to by defendant, as well as the refusal to give those requested. As the substance of the instructions refused was largely contained in the instructions given by the court we will not notice them further. The instructions given by the court are in the main such as have heretofore had the approval of this court, and will not be here discussed, except where specially assailed. It was contended at the trial, and is stated in defendant's brief, that "the burden of proof is not upon the railway company to show that the injury was due to the act of God, but upon the plaintiffs to prove that the loss was not occasioned by Providence," and the case of the *City of McCook v. McAdams*, 76 Neb. 7, is cited in support thereof. Since the preparation of defendant's brief in this cause, a rehearing was had in that case, and it was held that, where the act of God was presented as a defense in a case of negligence, the burden of proof was on the defendant to establish

such defense. See *City of McCook v. McAdams*, 76 Neb. 11. We may assume that this question is now settled against the contention of defendant.

Instruction numbered 3, requested by defendant and refused by the court, is to the effect that it was not claimed by plaintiffs that the defendant was guilty of negligence in the original construction of its road in 1892, 1893, and that it was for the jury "to determine whether the changes made with reference to the embankment in 1898 were skilfully and carefully or negligently and carelessly made." There is no record made by the court as to whether this instruction was given or refused, nor whether there was any exception to any action of the court thereon. But, as there was a list of exceptions filed in which it is said, "the defendant excepts to the refusal to give instruction numbered 3 requested," we will assume that the instruction was not given, and that due exception was taken. We are unable to see that any prejudice could result to defendant by the failure to give the instruction. We have been unable to discover anywhere in the record any claim by plaintiffs that the original construction of defendant's railroad was in any way negligent or wrongful. It is alleged in the petition that prior to the commission of the wrongs complained of the defendant constructed its line of railroad across plaintiffs' farm and has since operated said line of road; that some time prior to the year 1902 the defendant constructed an embankment across said stream and entirely filled up said stream, and left no opportunity for the water to pass along its former and natural course underneath the road-bed of the defendant's railroad, but completely dammed said stream at the point where the same is intersected by the said line of road. There was no claim during the trial that any injury was caused by the original construction of the railroad. There was no issue of that kind before the jury upon which the court had not given suitable instructions.

After the introduction of the evidence, and before the

jury retired to consider their verdict, counsel for defendant requested the court to submit to the jury the following interrogatories or special findings: "(1) Was the railway of defendant constructed across the east half of section 32, township 8 north, range 6, in Lancaster county, Nebraska, constructed in a proper and careful manner? (2) Was the injury, if any, suffered by the plaintiffs due in any manner to the construction of the railroad of the defendant across the east half of section 32, township 8 north, range 6, in Lancaster county, Nebraska? (3) Were the embankments and bridges of the defendant on the east half of section 32, township 8 north, range 6, in Lancaster, county, Nebraska, properly and carefully constructed? (4) Was the injury, if any, suffered by the plaintiffs due to the construction of the embankments and bridges of the defendant?" These requests were refused, and the action of the court in that behalf is assigned for error. It is the well-settled law of this state that the matter of submitting special findings to a trial jury rests in the sound discretion of the court. *Floaten v. Ferrell,* 24 Neb. 347; *Hedrick v. Strauss,* 42 Neb. 485, and many other cases which need not be here cited. In the absence of a clear abuse of discretion by the court in the refusing such requests its action will not be reviewed. In this action of the court we are unable to discover any prejudice resulting to defendant. The issues submitted to the jury were few and simple. The answering of the questions either way by the jury would have furnished no aid to the court or the parties to the suit. The mere finding of the general verdict would necessarily be an answer to each one of the questions.

It is contended that the damages allowed by the jury were excessive; the amount being $663.33, including interest. The evidence showed the loss of 35 acres of oats of the value of $8 to $10 an acre; 15 acres of wheat in the shock of the same value an acre; 85 acres of corn of about the same value, besides meadow land and live stock.

Had the verdict been for twice the amount returned, it could not have been held excessive.

The court instructed the jury that in case their finding was in favor of plaintiffs they should ascertain from the evidence the value of the property damaged or destroyed, and the same with interest at 7 per cent. per annum from the 10th day of July, 1902, would be the amount of their verdict. Complaint is made of this instruction on the ground that plaintiffs were not entitled to interest. This question has been before this court in *Fremont, E. & M. V. R. Co. v. Marley*, 25 Neb. 138; *Union P. R. Co. v. Ray*, 46 Neb. 750; *Missouri, Kansas & Texas Trust Co. v. Clark*, 60 Neb. 406. The law is settled in this state that interest in such cases will be allowed.

We are unable to detect any error in the record calling for a reversal of the judgment of the district court. It will therefore be, and is,

AFFIRMED.