EDWARD WALKER, APPELLANT, V. NICHOLAS McCABE ET AL.,
APPELLEES.

FILED MAY 26, 1923. No. 22393.

Trial: SPECIAL FINDINGS. "A special finding controls a general verdict,
and when inconsistent with the general verdict it is the duty of the
court to render judgment accordingly." *Norfolk Beet-Sugar Co. v.
Preuner,* 55 Neb. 656.

APPEAL from the district court for Lincoln county:
J. LEONARD TEWELL, JUDGE. *Affirmed.*

*William E. Shuman,* for appellant.

*Halligan, Beatty & Halligan* and *George N. Gibbs,*
contra.

Heard before MORRISSEY, C. J., LETTON, ROSE and DEAN,
JJ., BEGLEY, District Judge.

DEAN, J.

Since this action was appealed to this court Dr. McCabe,
one of the defendants, died. Subsequently the action was
revived here in the name of Mrs. Mary McCabe, his widow,
and she, as his executrix, was made a party defendant.

Plaintif sued to recover $2,072 from defendants for re-
moving flood-waters from the basement of the McCabe
hotel at North Platte. The jury brought in the following
general verdict:

"We, the jury in this case, being duly impaneled and
sworn, do find and say that we find for the plaintiff and
against both defendants jointly in the sum of $1,059.95,
interest $49,44, $1,109.39, and against the defendant
Claud Weingand, alone, in the additional sum of $53.75,
interest, $4.76, $58.51, and we fix the amount of plaintiff's
recovery against said defendants in said sum."

Special findings in the form of interrogatories were sub-
mitted to the jury on motion of plaintiff. The interroga-
tories and the answers thereto follow:

"1. What do you find to be the total reasonable value
of the services performed by the plaintiff in pumping the
water out of the basement of the hotel McCabe during
the period extending from April 14, 1920, to May 28, 1920,

Walker v. McCabe.

both dates inclusive?   Answer, $1,113.70 without interest added.

"2.   In how much, if anything, is the defendant, Nicholas McCabe, indebted to the plaintiff on account of the water being pumped out of said basement?   Answer, $529.97, interest $24.72.

"3.   How much, if anything, is the defendant, Claud Weingand, indebted to the plaintiff on account of the water. being pumped out of said basement?   Answer, $583.73, interest $29.48."

McCabe moved that judgment be entered upon the special findings and that the costs be taxed equally against defendants.   The motion was sustained and pursuant thereto judgment was rendered against McCabe for $554.69, with interest, and against Weingand for $613.21, with interest, the costs being taxed equally against defendants.   Plaintiff appealed.

The condition of the subsoil at North Platte, with respect to water rising to the surface at times, is material here and is briefly explained in plaintiff's brief.   He says:

"North Platte is situated in the valley between the North and South Platte rivers, which join a very few miles east of the city.   This condition causes water to come up under the surface of the ground and enter into the basements.   The situation is very annoying, and often sewage comes up into the basements also."

It appears that, when the lease was entered into, the peculiar condition of the soil, with respect to seepage, which prevails when the rainfall is excessive was contemplated by McCabe and Weingand, as shown by this excerpt from the lease, which was in full force and effect at the time of the controversy herein.   The excerpt follows:

"It is further understood and agreed that the party of the second part (Weingand) is conversant with the water conditions in the ground upon which North Platte is situated, and that he assumes all risk of water in the cellar and basement of said hotel building and shall not

hold first party (McCabe) liable for any damage arising by reason of water in said basement. It is further agreed that upon the completion of said building, in accordance with the plans and specifications heretofore referred to, that the said second party shall make all repairs necessary to be done upon the inside of said hotel building and the said first party will do the repairing necessary to be done on the outside of said building, such as repairing the roof; that said first party shall have the water and sewer connections in good condition when said hotel building is completed and turned over to said second party, and said second party shall keep the same in good condition, and pay necessary expenses for repairs in so doing."

Dr. McCabe, during all of the time material to this inquiry, was the owner of the McCabe hotel building. Weingand was his tenant under a ten-year lease. The hotel has 68 rooms, and a basement wherein there is a steam heating plant, a hot water heater, and an electric motor to operate a passenger elevator. April 14, 1920, a heavy rainfall in the North Platte vicinity caused the water to rise in the hotel basement and extinguish the fires and otherwise discommode the tenant and his guests. Weingand was at Omaha serving on a federal jury at the time, and his wife took the matter up with Dr. McCabe. When the action was tried Mr. Weingand was in business at Los Angeles and the deposition of Mrs. Weingand was taken in that city.

On the direct examination Mrs. Weingand testified that on the morning of the flood she met Dr. McCabe in front of the hotel and told him "about the water and how the fire was, and I said I do not know what to do." To which the doctor replied, "We will have to get Walker (plaintiff) and pump it out." and that her recollection was that Walker began working the same day or the next.

Defendant McCabe testified in substance that he relied upon the conditions in the lease with respect to taking the water out of the basement, and that he had no conversation with plaintiff after he began work until some-

time early in May when plaintiff asked him for $200, and that he then told him that he did not owe him anything. The witness further testified that he reminded plaintiff, that Weingand had paid him the year before for taking the water out of the basement and that the lease protected him (McCabe), and that plaintiff would have to collect the money from Weingand or quit work. On another occasion it appears from McCabe's evidence plaintiff again asked him to pay and that he told him that he had to protect himself. Shortly thereafter this suit was commenced. On the cross-examination the doctor denied that he said to Mrs. Weingand, "We will have to get Walker and pump it out," but that he said, "You will have to get Walker." He also testified that Weingand paid plaintiff for pumping the water out of the basement the previous year under the present lease. It further appears from a disinterested witness that plaintiff removed his pump from the hotel the morning of June 1, 1920.

Plaintiff himself testified that in the fore part of May, 1920, after he had pumped about a month, he called on Dr. McCabe, and when he asked him for money the doctor said to him in substance that Weingand paid him for pumping the water out last year and that he must pay for the work this year, and that the doctor further informed him that he was protected by a clause in his lease.

The court instructed the jury *inter alia,* instruction No. 9: "In this case, it is admitted by all parties that the defendant McCabe owned the hotel building and the defendant Weingand was operating the hotel, during the time the plaintiff was pumping the water from the basement. If under the evidence you find that the defendant McCabe asked the plaintiff to bring his equipment and pump the water from the basement; that the plaintiff pursuant to said request, without knowledge of the terms of the lease between defendants McCabe and Weingand, rendered the services requested, without any talk or agreement as to consideration therefor, then the law implies the

agreement on the defendant McCabe's part to pay the reasonable value of the services rendered. If you further find from the evidence that, after the plaintiff Walker began the work of pumping out the water from the hotel basement, plaintiff presented a bill to the defendant McCabe, and the defendant McCabe then and at that time told the plaintiff that he was not liable for the work being then done by plaintiff and that he would have to go to defendant Weingand for his compensation, then I charge you that the defendant McCabe is not liable for any work done or expense made thereafter by plaintiff in pumping water out of the basement of said hotel and can be held only up to the date the defendant McCabe refused to pay for his services."

In instruction No. 5 the court further instructed the jury: "If you find that plaintiff was employed by both the defendants McCabe and Weingand, then you will find and determine under the evidence what the services rendered by the plaintiff were reasonably worth. The amount so found, together with interest on the amount found due, at the rate of seven per cent. per annum from May 28, 1920, to this date, will be the amount of your verdict in plaintiff's favor."

The bill rendered by plaintiff for services shows that he began work April 14, 1920, and that he quit work May 28 following, so that it may fairly be said to appear that plaintiff performed about one-half of the work when he presented a bill to Dr. McCabe and the doctor refused payment.

Plaintiff's argument that judgment should have been rendered by the trial court on the general verdict instead of on the special findings, which are inconsistent therewith, is not persuasive. Under the evidence and the instructions it appears from the special findings that the jury must have concluded that each of the parties was liable for approximately one-half of the amount which the jury allowed for plaintiff's services. In any case it clearly appears that the special findings are inconsistent with the

general verdict and that they are supported by the evidence and respond to the instructions of the court.

The statute provides. "When the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly." Comp. St. 1922, sec. 8803.

In *Norfolk Beet-Sugar Co. v. Preuner*, 55 Neb. 656, we held: "A special finding controls a general verdict, and when inconsistent with the general verdict it is the duty of the court to render judgment accordingly."

We conclude that the trial court did not err in refusing to grant a new trial. The judgment is therefore

AFFIRMED.