McGREW MACHINE COMPANY, APPELLANT, V. ONE SPRING ALARM CLOCK COMPANY, APPELLEE.

FILED NOVEMBER 17, 1932. No. 28292.

*Mockett & Finkelstein* and *Tyler & Peterson,* for appellant.

*Jessen & Dierks, contra.*

Heard before ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

Plaintiff, who was the appellant in this court, sued defendant and appellee for $7,484.14, due upon certain contracts to manufacture and deliver parts of its one spring alarm clock. Defendant claimed the parts furnished were not made according to specifications, and were of no value whatever, and in a cross-petition defendant asks judgment against plaintiff in the sum of $17,399.43. The jury returned a verdict for the plaintiff in the sum of $1,000, for which amount judgment was entered on October 8, 1931, with 7 per cent. interest. Plaintiff, being dissatisfied with the verdict returned in its favor, filed a motion for new trial, setting out 57 errors therefor. From an overruling of the motion for new trial, plaintiff gave a supersedeas bond of $400 and appealed to this court to reverse and set aside said verdict and judgment.

In this case we find the record is very extensive, with 153 pages of briefs, three volumes in the transcript and bill of exceptions, with a fourth heavy volume of blueprints and order sheets, and a large box of exhibits of parts of, and also complete, alarm clocks. It would take many pages in this opinion to give a complete synopsis of the pleadings and the evidence set out in this mass of material, and if this opinion is to be kept down to an acceptable length it must be limited to a brief summary.

A. F. Kendle, who had resided in Syracuse, Nebraska, for 30 years, and was a jeweler and watchmaker by pro-

fession, invented a one spring alarm clock, after working on it for six or eight years, and made by hand an excellent working model. The Reliance Die Shop in Chicago under his direction completed certain parts thereof, and a number of his friends then organized at Syracuse the One Spring Alarm Clock Company, the defendant herein, for the manufacture and sale of this new clock. Negotiations were begun with the plaintiff company for the purpose of manufacturing dies, from which parts could be made, and also of perfecting and manufacturing the various parts of the same, so that this clock could be put out on a commercial basis. After several years, the relations between the companies became very unsatisfactory, and the plaintiff brought suit in Otoe county.

The petition sets out several causes of action, the first one being upon an oral agreement entered into prior to January 14, 1929, to perform certain services on a cost plus basis, which services were performed and goods furnished amounting to $2,111.51. It is admitted that payments were received of $769.45, leaving a balance due thereon of $1,342.06.

For a second cause of action, the plaintiff said there was a balance of $2,373.58 due under a written contract dated April 2, 1929, for special dies, limit gauges, and wheels. For answer to this, the defendant stated that it had paid $8,000 to Chicago die makers for dies which were delivered to the plaintiff, and that the parts made by plaintiff were not up to standard in material and workmanship, or according to the specifications, and said articles were refused, and denied there was anything due thereon.

In its third cause of action, plaintiff sued for 2,000 sets of parts of the one spring alarm clock, at a cost of $1.30 a set, a total of $2,600, upon which $200 was paid, leaving $2,400 due. The defendant, for answer to this, alleged that the plaintiff did not use material equal to the material in the model clock, and, of the sets furnished, only 200 were used, which, however, the defendant was compelled to work over by hand before they would meet the specifi-

cations and requirements, or could be used, and that the other sets, 1,800 sets, were returned to the plaintiff as unsatisfactory.

The plaintiff's fourth cause of action was for certain pinion wire, which, it is alleged, the defendant had agreed to take off plaintiff's hands if it was not entirely used, and that there was $944.40 due for the value of the wire left on plaintiff's hands, which facts defendant denies. Plaintiff, therefore, sues for a total sum of $7,484.14.

The defendant, in its cross-petition, claims that all payments made by it were made under a written contract, being exhibit 2, dated April 2, 1929, under which the plaintiff company agreed to make all dies required for the 12 wheels for a sum not to exceed $2,500, to make special tools for the Brown & Sharp automatic screw machine for not to exceed $500, to make limit gauges for not to exceed $800, which sums the defendant agreed to pay in part payments as the work progressed, and alleged that the plaintiff agreed that all work would be according to specifications, and would guarantee the same as to material and workmanship, and that only when the tools and dies were completed and approved would the unpaid balance be due and payable. Defendant alleges that, as the plaintiff failed to turn out satisfactory work, there has been a complete failure of performance under the contract, exhibit 2, and that, except for $81.98, express charges paid, and $13.32 for telephone calls, all other payments made under the terms of exhibit 2 should be returned to the defendant for entire failure under the terms of the contract, and that therefore the defendant is entitled to recover the sum of $2,339.43.

The plaintiff, for answer to the first cause of action of defendant's cross-petition, alleges that all dies and tools were made of first grade materials, and perfectly performed the operations for which they were intended, and that part of the money paid to the plaintiff was for extra work not provided in the contract, exhibit 2, and denied all other allegations.

At the close of the evidence, the court withdrew from the jury the second, third, and fourth causes of action of the defendant's cross-petition, on the ground of failure of evidence to support the same.

This brief statement is a mere outline of the voluminous pleadings, and will indicate the many issues contested and the wide scope of the evidence taken in support thereof.

The trial judge gave some 12 instructions, which covered all the issues involved in a fairly satisfactory manner, and in his refusal to give 17 additional instructions requested by the plaintiff is based a large number of the errors set out.

1. Plaintiff claims that the jury entirely disregarded the evidence and the instructions, and returned a verdict not supported by either, and that a new trial must be granted.

As one ground for reversal, the plaintiff insists that, by returning a general verdict, the jury necessarily found in favor of the plaintiff on every material issue raised in the pleadings, including all four causes of action.

Defendant insists that the verdict of $1,000 conclusively establishes the contrary. Upon the return of the verdict, the plaintiff did not except to it, but the defendant claims it excepted to it for the reason that it did not find the amount allowed the defendant upon its set-off, and moved the court that the jury be required to correct the verdict in this respect, which motion was overruled.

In *Everson v. Graves*, 26 Neb. 262, suit was brought on two promissory notes, which defendant admitted executing, but presented a set-off, and, as a result of the trial, a verdict was returned by the jury in favor of the plaintiff, and Chief Justice Reese held that, if a cause was submitted to a jury upon the demand of plaintiff and the cross-demand of defendant, and the jury returned a verdict in favor of the plaintiff, which showed an allowance of part of the defendant's set-off, it was not error on the part of the district court to refuse to order the jury to re-

tire and return in their verdict the amount allowed in the set-off.

2. Plaintiff also insists that, where several causes of action are joined in the same proceeding, and pleaded separately, separate verdicts should be returned on each cause of action, and cites us to *Hindmarsh v. Sulpho Saline Bath Co.*, 108 Neb. 168, in which case, brought by an administratrix to recover damages for the death of Roy B. Hindmarsh, there were two separate causes of action, though not separately pleaded, and the jury returned a single verdict in the sum of $4,000, and, while it is held that the two separate causes of action should be separately pleaded and separate verdicts returned, yet in the case cited the judgment was affirmed upon one general verdict being returned. Plaintiff also cites us to *Schmuck v. Hill*, 2 Neb. (Unof.) 79, in which Commissioner Pound held to the same effect, that, if several causes of action are set up in a petition, a separate verdict upon each is not improper.

The plaintiff charges that, when the defendant denies the allegations of a cause of action and pleads a counterclaim, a general finding is sufficient to dispose of both issues, and cites us to the case of *Guthrie v. Brown*, 42 Neb. 652, in which an equity action was referred to a referee and, upon the report being filed, trial was had to the district judge upon the evidence taken before the referee, and a general finding and single judgment was entered by the district judge, and Commissioner Irvine held that it was not necessary to make a separate finding upon the counterclaim, but that the judge could dispose of both issues with a single entry, and section 20-818, Comp. St. 1929, holds that two such demands may be deemed compensated so far as they equal each other.

3-5. In the case at bar, the form and number of verdicts to be returned by the jury is discussed from many angles, and it may be stated that the responsibility for returning a true verdict rests upon the jury. It is a matter of accommodation, and not a legal requirement, that the

trial judge supply the jury with the proper forms in any given case. *Birdsall v. Carter,* 11 Neb. 143.

It is a general rule that, where the judge assumes to submit forms of verdict, he should not omit therefrom any one or more forms of verdict which may properly be returned on any of the issues.

While the trial judge is not required to submit forms of verdicts to the jury, yet, if he does not, he is required to give clear and specific directions as to the various findings allowable, and complete information as will enable the jury to prepare its own verdict, to avoid uncertain and indefinite verdicts being prepared and returned by a jury.

It is good practice for the judge to prepare forms of verdict which will meet all requirements of the case, and, in an abundance of caution, submit the same to the counsel in the case, and, if they do not agree on the forms, counsel should make his objection at that time, before the instructions are read to the jury. If no objection is made by counsel at that time, it is usually considered that objections are waived. *Hamilton Investment Co. v. Bollman,* 268 Fed. 788; *Kelley-Clarke Co. v. Leslie,* 61 Cal. App. 559; *Vaughan v. Farmers & Merchants Bank,* 146 Ga. 51; *Freeby v. Town of Sibley,* 183 Ia. 827; 27 R. C. L. 858, sec. 30; *O'Connell v. United States,* 253 U. S. 142.

In the case of *Walter v. Louisville R. Co.,* 150 Ky. 652, Ann. Cas. 1914D, 441, we find this statement: "Moreover, appellant did not object to the form of the verdict at the time it was rendered, but treated it as sufficient for the purposes of the case, and permitted the jury to be discharged without objection. If appellant had desired to raise the question of the sufficiency of the form of the verdict, he should have done so at the time it was returned, in order that the court might, as would have been its duty, have directed the jury to correct the form of its verdict so as to conform to the law."

We see no reversible error in the procedure adopted in this case, for counsel objecting furnished no forms of verdict to the court, and called attention to the matter only

after the verdict had been received and filed and the judgment entered thereon.

6. Again, the plaintiff insists that a verdict for nominal damages, contrary to instructions to allow it substantial damages, if the verdict was in its favor, should be set aside, and cites in support of its contention the case of *Meier v. Bridgeport Irrigation District,* 113 Neb. 344, in which case a suit was brought for damages to crops on account of the failure of an irrigation district to furnish water, the prayer asking for $13,343. At the trial the jury returned a verdict for only $1, and this court held that the verdict should be set aside on that ground. By the term "nominal damages" is meant a trivial sum, which recognizes a right, but makes no adequate return therefor. It has been said that a return of nominal damages is really no damages at all, but a mere peg to hang the costs on. *Rainier v. Masters,* 79 Or. 534, L. R. A. 1916E, 1175. In the case of *Berney v. Adriance,* 142 N. Y. Supp. 748, it was held that a verdict for $2,500 is not for a trifling sum, and therefore not nominal damages. "Nominal damages mean no damage at all—that they exist only in name, and not in amount." 8 R. C. L. 423, sec. 4. Certainly this court will not set aside a verdict for $1,000 on the ground that it is but nominal damages.

7. It is insisted in this case that special findings should have been returned by the jury. This court has frequently held that, even though many vital issues are set out in the pleadings, the district court is not required to direct the jury to return special findings. And, further, if special findings are requested by either of the parties in a case prior to the time of reading the instructions to the jury, that it is entirely a matter within the discretion of the trial court whether such request for special findings will be submitted or refused, and that exceptions should be taken thereto, and a denial of the submission of such findings will not be reviewed by this court except for abuse of discretion. *Town v. Missouri P. R. Co.,* 50 Neb. 768; *Buel v. Chicago, R. I. & P. R. Co.,* 81 Neb. 430; *Reed v.*

*McRill*, 41 Neb. 206; *First Nat. Bank v. Miltonberger*, 33 Neb. 847. Section 20-1121, Comp. St. 1929, clearly indicates that the court may direct .the submission of such issues to the jury, and that the jury itself render a special verdict without direction from the court.

In *Thompson v. Thompson*, 49 Neb. 157, the jury were directed to answer certain special interrogatories. They returned these answers into court with their general verdict, and the same were received and recorded, without any protest or objection from any one. It was insisted in the supreme court that, the foreman of the jury having failed to sign the answers to the special interrogatories, the court erred in rendering judgment thereon. It was held by this court that such objections should have been made to the trial court at the coming in of the verdict, and that it was too late to make them afterwards.

Frequently the jurors are confused by attempting to make answers to special findings submitted, and the result is that these answers do conflict with the general verdict. In *Karr v. Brown*, 112 Neb. 626, the general verdict was for $422.04, while the answers to the special findings indicated that it should be for $71.96. Therefore, as under section 20-1120, Comp. St. 1929, the special finding of facts controls the general verdict, it was necessary to affirm the case on condition that a remittitur be filed for the difference. See *Walker v. McCabe*, 110 Neb. 398; *McClary v. Stull*, 44 Neb. 175; *Kafka v. Union Stock Yards Co.*, 78 Neb. 140.

In the case at bar, there is no record that requests for special findings were submitted to the trial court, which should have been done, and his denial thereof made a part of the record, if a reversal is to be based thereon.

Many errors are laid on the giving, and refusal to give, of various instructions, but it appears to this court that all of the important matters were concisely covered in the 12 instructions submitted, and no vital feature was overlooked, and that the refusal of the court to give the 17 instructions submitted resulted in no prejudicial error.

*Payne v. Clark,* 117 Neb. 238; *Sonneman v. Atkinson,* 121 Neb. 752; *Trussell v. Ferguson,* 122 Neb. 82.

We see nothing in this record to support any lack of good faith in the conduct of either party. The defendant was undertaking to perfect and place on the market a new one spring alarm clock. It was found, for instance, in practice that, when the hole punched by the die in one of the many wheels therein was off center the slightest fraction of an inch, the clock would not keep satisfactory time, and when sold would be returned by the customer. The parties hereto worked under a written contract, as well as oral contracts and verbal understandings, and the court is unable to discover in this record any deliberate attempt by either party to overreach the other. The plaintiff knew the purpose of the work it was employed to do, and the article manufactured from the dies and parts furnished by the plaintiff failed to perform in the same accurate manner as the original clock made by the inventor by hand, and the clocks were not salable. The result was the loss of all the stockholders invested in the defendant company, and the jury considered all of these questions, and finally returned a verdict for $1,000 for the plaintiff company as the amount they were entitled to under the evidence. This court sees no good reason to set the verdict and judgment aside.

AFFIRMED.

Rose, J., took no part in the opinion.