WALTER R. PRESTON, APPELLEE, V. FARMERS IRRIGATION DIS-
TRICT, APPELLANT.

293 N. W. 343

FILED JULY 19, 1940.   NO. 30933.

*Neighbors & Danielson,* for appellant.

*Morrow & Morrow, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ., and BLACKLEDGE, District Judge.

JOHNSEN, J.

Plaintiff sued for damages to his crops and land, in the sum of $2,656.74, occasioned by defendant's failure to make delivery of irrigation water under his preferred water-right contract. On the first trial, the jury awarded him damages of only $118.75, and plaintiff appealed. The judgment was reversed for inadequacy of amount, and the case was remanded for a new trial. *Preston v. Farmers Irrigation District*, 134 Neb. 503, 279 N. W. 298. On the second trial, plaintiff recovered a verdict and judgment for $1,477.50, and defendant has appealed.

The nature of the rights vested in plaintiff, as the holder of a preferred water-right contract, is discussed in *Vonburg v. Farmers Irrigation District*, 132 Neb. 12, 270 N. W. 835, and *Ledingham v. Farmers Irrigation District*, 135 Neb. 276, 281 N. W. 20. By the terms of plaintiff's contract, defendant, through assignment and succession, agreed to convey and deliver to plaintiff, at any point along defendant's canal, not more than forty miles from the diversion point in the North Platte river, "eighty square inches of water, continually flowing through and during the irrigation season of each and every year * * * in perpetuity," which right was to be "forever free from any and all assessments or taxes of any nature or for any purpose whatsoever." It was provided also that the holders of the preferred water-right contracts could not be required to prorate with subsequent stockholders in the canal, and that defendant would hold plaintiff "harmless and free from loss and damages through or by any neglect whatsoever * * * to deliver the water, as hereinbefore covenanted and agreed."

Defendant's canal is approximately eighty miles in length, but all the lands to which the water under the preferred-right contracts is applied are located within the first twenty

miles of its course. The controversy here involved arises out of the fact that in 1934, by virtue of a water shortage in the North Platte river, defendant undertook to require the holders of the preferred rights to prorate with those having subordinate rights along the canal. In *Vonburg v. Farmers Irrigation District, supra,* this was held to be a violation of the vested rights of the holders of the preferred water-right contracts.

The first contention urged by defendant as a ground for reversal is that plaintiff did not prove that there was a sufficient supply of water to have enabled him, together with the other preferred-right holders, to have received the quantity to which he was entitled under his contract, and that the verdict therefore is not supported by the evidence and is contrary to law. There was evidence on the part of plaintiff to show that, with the exception of a few days in July and August, the supply of natural-flow water in defendant's canal during the irrigation season was equal to or exceeded the amount which the preferred-right holders were entitled to have delivered to them under their contracts. Plaintiff's position was that, by rotation with the other preferred-right holders during this period, as they would have done, he could have received his full supply of water throughout the irrigation season, except for two or three days in July and August, had defendant not arbitrarily denied it to him. Defendant insists, however, that, whatever the quantity of water in the canal may have been, plaintiff did not attempt to prove the amount of the probable carriage loss from evaporation and seepage, and so did not establish what the actual amount of natural-flow water was that could have been delivered to him, and that he therefore did not sustain the burden of proof which rested upon him.

*Ft. Lyon Canal Co. v. Bennett,* 61 Colo. 111, 156 Pac. 604, is cited in support of defendant's contention. In that case it was said: "Whether there was a sufficient volume of water in the canal at the time plaintiffs needed it was a vital issue * * * upon which they had the burden of proof."

That was an action in tort, against a third party with whom no contractual privity existed, for negligent interference with a lateral that led from the water canal to plaintiff's lands. Here, the action is one for breach of a contract to deliver water, in which defendant seeks to justify nonperformance, in part at least, on the ground of a "supervening impossibility" (Restatement, Contracts, sec. 457), in the nature of what is sometimes loosely referred to as a "vis major" or an "act of God." The burden of exonerating itself from the obligation of a contract on such a ground rests on the defendant. *Buel v. Chicago, R. I. & P. R. Co.,* 81 Neb. 430, 116 N. W. 299. An irrigation company which seeks, on the ground of a supervening impossibility, to excuse its failure to deliver water pursuant to the terms of its contract obligation is within the operation of this rule. 3 Kinney, Irrigation and Water Rights (2d ed.) 3124, sec. 1693; 67 C. J. 1438, note 67; 15 R. C. L. 481, sec. 34. In this case, therefore, the burden rested upon defendant, and not on plaintiff, to show the quantity of water that it was possible to have delivered to him after taking into account all pertinent factors, including carriage loss from evaporation and seepage. Plaintiff established a *prima facie* case when he proved defendant's failure to deliver the quantity of water required by his contract and the extent of the damage to his crops and land from the failure to receive such a supply.

In *Tapper v. Idaho Irrigation Co., Ltd.,* 36 Idaho, 78, 98, 210 Pac. 591, 597, the court said: "The appellants made a *prima facie* case by proving the contract and failure to deliver water in accordance with its terms and consequent damages to their crops together with the amount thereof. It was incumbent upon respondent to prove the failure of the water supply on account of an extraordinary drouth, and also that it delivered to appellants their just proportion of the water supply which it had." There are a number of other Idaho cases to the same effect. *Edholm v. Idaho Irrigation Co., Ltd.,* 37 Idaho, 116, 214 Pac. 1036; *Preis v. Idaho Irrigation Co., Ltd.,* 37 Idaho, 109, 215 Pac. 466;

*Meservy v. Idaho Irrigation Co., Ltd.*, 37 Idaho, 227, 217 Pac. 595. We would not go the length of holding, as does the Idaho court, that only an extraordinary drouth will excuse the failure to perform such an unconditional contract, because the sources and conditions of water supply in this state probably require, as a matter of implied contemplation and reasonable construction, that we recognize as a supervening impossibility, excusing nonperformance, any natural failure of water supply, where the irrigation company is not in contributing fault, unless there is other controlling language in the contract. But this, of course, does not affect the application of the rule with respect to burden of proof.

We accordingly hold that plaintiff was not required to produce proof of the extent of the carriage loss in defendant's ·canal, in order to sustain the burden of proof which rested upon him in this case. Defendant, as a matter of fact, offered evidence on the point, in an effort to convince the jury that it could not legitimately have furnished plaintiff more water than it did; but the testimony of its expert was based upon factors of judgment and opinion, and not upon demonstrated measurements of evaporation and seepage losses, so that it was not conclusive upon the jury. Defendant attempted to prove also what it considered was the extent of plaintiff's legitimate damages. The jury were at liberty to consider all this evidence in determining the extent of plaintiff's loss, and they had the right to make deduction for such portion of the crop failure as they might deem attributable to a supervening impossibility to furnish water, for the occurrence of which defendant was not in contributing fault. Plaintiff was not bound to adapt his proof of damages to the factors of excuse or mitigation relied upon by defendant, where the acceptance and effect of those factors were solely matters for jury determination. The proof offered by plaintiff as to the extent of his damages was sufficient under the circumstances to sustain the burden resting upon him and to support the verdict which the jury returned. Apparently, the jury did not accept either the evidence on behalf of plaintiff or that on behalf

of defendant with absoluteness, nor were they bound to do so.

The second contention urged as a ground for reversal is that the court failed to instruct the jury that plaintiff could not recover for any damage to his crops that had occurred prior to July 1, 1934, or to give the instruction to that effect that was tendered by defendant. This contention rests upon a conflict in the evidence as to the condition of plaintiff's crops at the time when the obligation to furnish water under the contract began. Instruction No. 4, however, given by the court, told the jury, in substance, that, in determining the value of plaintiff's crops, it was required to take into account the state of the crops when the injury for which suit was brought began, and this was sufficient to prevent any possibility of the jury being misled. We have repeatedly held that the failure to give a tendered instruction is not reversible error where the issue involved is fairly and correctly covered by given instructions. *Miceli v. Equitable Life Assurance Society, ante,* p. 367, 293 N. W. 112.

Defendant's final contention is that the court erred in striking paragraph 7 of·its answer and in refusing to receive evidence in support of it. We quote defendant's argument from its brief. "It was contended by defendant in paragraph 7 of its answer that all natural-flow water discharged into defendant's canal during July, August and September was water obtained by reason of litigation between Mitchell Irrigation District and defendant, and that this water would not have been available in the event defendant had not participated in this litigation. Plaintiff was not a party to this litigation, plaintiff did not bear any part of the expense of this litigation, and plaintiff was not a party to the agreement with Mitchell Irrigation District. He was in no way entitled to participate ·in the benefits accruing by reason of defendant's agreement with Mitchell Irrigation District." The water involved was obviously natural-flow water from the North Platte river which defendant claimed was wrongfully being diverted by the

Mitchell Irrigation District, in violation of defendant's appropriation rights. The fact that defendant was forced to resort to litigation to maintain its rights and that plaintiff did not contribute to the expense of the litigation did not change the character of the water, nor plaintiff's right to it. Under his contract, plaintiff was entitled to have delivered to him a certain quantity of the natural-flow water from the North Platte river, covered by defendant's appropriation, "forever free from any and all assessments or taxes of any nature or for any purpose whatsoever." Paragraph 7 of the answer, therefore, did not state a defense.

Defendant is not entitled to a reversal on any of the contentions urged.

AFFIRMED.