WALTER R. PRESTON, APPELLANT, V. FARMERS IRRIGATION DISTRICT, APPELLEE.

279 N. W. 298

FILED APRIL 15, 1938. No. 30283.

*Morrow & Morrow,* for appellant.

*Neighbors & Coulter* and *Lester A. Danielson, contra.*

Heard before GOSS, C. J., EBERLY, PAINE, CARTER and MESSMORE, JJ., and LIGHTNER and SPEAR, District Judges.

PAINE, J.

Plaintiff brought action against the Farmers Irrigation District, defendant and appellee, to recover damages of $2,656.74 to an 80-acre tract of ground and the crops growing thereon, because of the wrongful failure of defendant to deliver water from its canal for irrigation purposes. The jury returned a verdict for only $118.75, upon which judgment was entered. Plaintiff has appealed.

Plaintiff sets out many assignments of error, among them that the verdict was not sustained by the evidence and is contrary to the evidence; that the verdict is so inadequate as to raise the presumption that it was the result of passion and prejudice, for it allows only a fractional part of the actual damages plaintiff was entitled to recover. The plaintiff then sets out a number of interrogatories, to which his objections were overruled during the trial and answers permitted to be made, and charges that the court committed prejudicial error in each of such rulings.

In 1891 the Farmers Canal Company issued certain water-right contracts, all identical in form, and when the plaintiff became the owner of the north half of the northeast quarter of section 21, township 23 north, range 57 west, in Scotts Bluff county, he thereby became the owner of one of these water-right contracts. The said contract, passing to him from the former owners of the land, is set out in full in the petition. The defendant, Farmers Irrigation District, now owns the canal formerly owned by the Farmers Canal Company, purchasing the same from the Tri-State Land Company, a New Jersey corporation. Such contract issued in 1891 provided generally that, in consideration of $200, receipt of which was acknowledged, the successors and assigns of the Farmers Canal Com-

pany agree to deliver to the second party, their. heirs and assigns, during the irrigation season of each and every year in perpetuity, 80 square inches of water continually flowing through and during the irrigation season of each and every year thereafter, and, further, that it will deliver such water, at the headgates erected and provided by the second party along the line of said canal, in such amount at each headgate as may be directed by the party of the second part, but the total amount of water delivered not to exceed 80 square inches of flowing water.

The contract provided that the water should be measured according to the following rules: An inch of water shall be a quantity flowing through an inch-square orifice with a five-inch pressure; the flume at each and every headgate shall be at least 12 feet in length, and at the end nearest the canal shall be placed a movable gate for receiving the water, and at the opposite end of the flume the orifice for delivering the water shall be one inch square for each square inch of water to be delivered, and the receiving gate shall be raised high enough to allow the water to flow through in sufficient quantity to stand five inches above the upper line of the delivery orifice; to secure the faithful performance of this contract, the canal company and its successors and assigns forever waive all right to prorate the water in said canal, and the second party, his heirs and assigns forever, shall be supplied with water first in preference over any and all subsequent stockholders in said canal, and that this perpetual water right shall be forever free from any and all assessments or taxes of any nature or any purpose whatsoever. The quantity of water specified in all of these contracts was approximately 2,740 inches, and the agricultural land thereunder was 2,612 acres for irrigation in the season of 1934.

The defendant for answer admitted certain paragraphs of the petition, but denied others. In paragraph 7 the defendant alleged that all of the water diverted from the North Platte river into the canal, exclusive of storage

water, during the months of July, August, and September, was water obtained by contract with the Mitchell Irrigation District, and that plaintiff was not a party to said contract nor to said litigation, and alleged that, had not the contract between the defendant and the Mitchell Irrigation District, settling the controversy for the year 1934, been entered into, even with the water obtained thereby there was insufficient water available in the river for diversion into the defendant's canal, after allowing for loss and seepage and evaporation, to supply plaintiff and other holders of similar contracts with the amount of water provided in their contracts.

Defendant further alleged in its answer that plaintiff's contract is contrary to public policy, is null and void in so far as it attempts to give a preference right to the plaintiff, and that it would constitute a fraud upon the landowners within the district.

The plaintiff and holders of other priority contracts were entitled to receive water during the irrigation season of 1934 for approximately 2,612 acres of land. In the Farmers Irrigation District there were approximately 63,000 acres of land. The water from about the 1st of July, 1934, was insufficient to irrigate all the land, and the defendant district undertook to prorate the supply of it to all of the land. On the basis of 1/70 of one second foot of water for each acre, it would require 37.3 second feet of water to properly irrigate the 2,612 acres of priority contract holders. It is disclosed in the evidence of plaintiff that there were only seven days in July and three days in August in which there were less than 37.3 second feet of natural flow of the river diverted into the canal, and the supply was ample during practically all of the three months to have furnished priority contract holders the water to which they were entitled under the contracts.

There is a conflict in the evidence as to the exact amount of water received by the plaintiff during three of the months in dispute, which question was for the de-

termination of the jury. The plaintiff's evidence disclosed that his damages from failure of defendant to deliver the quantity of water to which he was entitled caused a loss of 34 tons of alfalfa at $12 a ton, $408; loss of blue grass pasture, $156; loss of 11.5 tons of hay on the new alfalfa seeding at $12 a ton, $138; loss of 23 acres of new seeding of alfalfa at $30 an acre, $690; making a total on these items alone of $1,392. Plaintiff alleged that he expended $275 to install an electric plant to pump water from Sheep creek to irrigate his land, and $40 for the current to operate said plant, but this plant can still be used by the plaintiff.

The plaintiff claims that the testimony of Phil Sheldon, Otto Juergens, and William Johnson, three of the defendant's expert witnesses, admits damage to 7.6 acres of young alfalfa of $228, to alfalfa hay of $45.60, also some damage to potatoes. It will be seen at a glance that the amount of these items is greater than the amount of the damage the jury returned.

In setting forth these items, it is understood that the defendant at all times insists that plaintiff suffered no damage to his crops other than was rightfully attributable to the shortage of the natural flow of water. A very large amount of testimony is found in the two volumes of the bill of exceptions tending to prove that defendant discharged more water into Sheep creek lateral during a part of this time than the plaintiff and other holders of preferred right contracts who took their supply for irrigation from this lateral were entitled to receive. Defendant insists that its evidence proves that it did not wrongfully withhold water from plaintiff during the month of August, but that it was physically impossible to make deliveries because of the extreme shortage of the natural flow of water; that the holders of preferred rights adjoining the Sheep creek lateral were being rotated in pursuance of some understanding reached among themselves.

The defendant argues that plaintiff would have suffered some damage if he had received all the water to which he

claimed to be entitled, and the court should have directed a verdict for defendant.

This mass of testimony was all properly submitted to the jury, and the trial court instructed the jury that the questions for their determination were these:

"First. Was the plaintiff prevented by the defendant from obtaining the water which he was entitled to receive from defendant's canal under the water-right contract owned by him for the irrigation of his land above described for July, August, and September, 1934, and if you so find, to what extent?

"Second. If you find from the evidence that plaintiff was prevented from obtaining water to which he was entitled under said contract for the irrigation of said land during said time, was his land and the crops growing thereon, or either the land or the crops growing thereon, damaged as a result of such prevention?

"Third. The amount plaintiff was damaged thereby, if any, you so find."

The jury found that plaintiff was prevented from obtaining the water he was entitled to receive, and returned a verdict which it is claimed is inadequate under the undisputed evidence.

We realize, as defendant argues, that a verdict based on conflicting evidence will not ordinarily be set aside unless clearly wrong. *Parkert v. Department of Public Works,* 131 Neb. 346, 267 N. W. 925.

Many of the early decisions in Nebraska held that a new trial could not be granted on account of the smallness of a verdict. Most of such decisions were based on section 315 of the Code of Civil Procedure of our state, which section was repealed by chapter 169, Laws 1911. 88 A. L. R. 943, Ann.

However, section 20-1142, Comp. St. 1929, provides clearly that a new trial may be granted: "Fifth. Error in the assessment of the amount of recovery, whether too large or too small, where the action is upon a contract, or for the injury or detention of property."

When the amount of the damages allowed by a jury is inadequate under the evidence in the case, it is error for the trial court to refuse to set aside such verdict. *First Nat. Bank of Dorchester v. Smith*, 39 Neb. 90, 57 N. W. 996; *Yager v. Exchange Nat. Bank of Hastings*, 57 Neb. 310, 77 N. W. 768; *Mares v. Chaloupka*, 110 Neb. 199, 192 N. W. 397; *Meier v. Bridgeport Irrigation District*, 113 Neb. 344, 203 N. W. 543; *Bishop & Parsons v. Mayor and City Council of Macon*, 7 Ga. 200, 50 Am. Dec. 400; *Nye v. Adamson*, 130 Neb. 887, 266 N. W. 767.

For the reasons stated, the judgment is set aside and a new trial ordered in accordance herewith.

REVERSED.