MARGARET ANN AMBROZI, APPELLEE, V. FLOYD FRY, APPELLANT.

62 N. W. 2d 259

Filed January 22, 1954.   No. 33390.

W. O. Baldwin, Van Pelt, Marti & O'Gara, Warren K. Dalton, and Robert D. McNutt, for appellant.

*Harvey W. Hess* and *J. V. Gaddy,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE. YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Margaret Ann Ambrozi brought this action in the district court for Thayer County against Floyd Fry. The purpose of the action is to recover damages for personal injuries suffered in an automobile accident which she alleged was caused by the defendant's negligence in suddenly, without warning, making a left turn in front of the car in which she was riding. Trial was had. The jury returned a verdict for plaintiff but assessed the amount of her recovery at "$ none." The trial court thereupon advised the jury it could not accept a verdict in that form, telling them that if they found for the plaintiff she was entitled to some damages. The jury, after further deliberation, returned a verdict for plaintiff in the sum of $75. Defendant thereupon filed a motion asking the court to enter judgment on the verdict for "$ none." Plaintiff filed a motion for new trial. The trial court sustained plaintiff's motion. It is from this order that defendant appeals.

Without dispute the evidence shows the accident happened shortly after 6 p. m. on Saturday, June 11, 1949, on U. S. Highway No. 81 at a point about 3¼ miles north of Chester, Nebraska; that the cars involved were a 1939 Chevrolet two-door sedan owned by appellant and a 1946 Buick four-door sedan owned by Martin Ambrozi of St. Joseph, Missouri, father of appellee; that the party in the Buick had left St. Joseph that day shortly after 12 noon to go to Grand Island, Nebraska; that St. Joseph is about 170 miles from Chester; that the party in the Buick consisted of appellee and her sister Mary Alice, who were riding in the front seat, and their sister Freta and her husband, Robert Birmingham, who were riding in the back seat; that Mary Alice Ambrozi, appellee's sister, was driving; that appellant was driving his car

and the sole occupant thereof; that at the time of the accident both cars were proceeding north on U. S. Highway No. 81, the Chevrolet in the lead; and that the right front of the Buick ran into and hit the left rear of the Chevrolet.

Appellee was married in June 1950, and her name is now Margaret Ann Osenberger.

U. S. Highway No. 81 cuts across a farm which, at the time, appellant was occupying as tenant. In fact, the highway is situated between the house and the other farm buildings located thereon. The house is west of the highway and a private lane extends east from a point just south of the house to intersect with the highway. The other farm buildings are on the east side of the highway and the private driveway also extends east from the highway to them. This lane had a dirt surface and is about 16 feet wide.

The highway at this point is straight and level. The traveling surface is covered with an oil mat which is about 26 feet in width. It had a white stripe down the center at the time of the accident. The day was clear and the surface of the highway dry and comparatively smooth. The impact occurred on the highway some 45 feet, or more, south of the south line of this private driveway if extended across the highway.

It is appellant's thought that the successful party in a case, who under the evidence adduced is not entitled to recover in any event, is not in a position to complain of errors alleged to have occurred at the trial and, because thereof, have the verdict in his favor set aside and a new trial granted. See, Copeland v. Junkin, 198 Iowa 530, 199 N. W. 363. In support of this thought appellant contends there is no evidence of any negligence on his part. In this respect he points to the following testimony of the driver of the Buick as the only evidence to support appellee's charge of negligence. She testified she was traveling between 50 and 60 miles an hour and when, "We was about four or five car lengths

behind Mr. Fry and I was going to pass him and pulled out into the left lane and blew my horn and started to go around him and was gaining speed, and then I noticed he was going to turn into a driveway and evidently he saw me and he started to pull over to the right, and then I pulled back into the right lane and I hit him."

Standing alone this statement would not be evidence that appellant had turned, or was turning, to the left into his driveway as the Buick attempted to pass. It would only be evidence of the fact that the driver of the Buick "noticed he was going" to do so. However, the driver of the Buick also testified that, "when he (appellant) started to turn into his lane (private driveway) he didn't have a tail light signal," nor did he give any hand signal.

"Negligence is the omission to do something which a reasonable man guided by those considerations which ordinarily regulate the conduct of human affairs would do, or doing something which a prudent and reasonable man would not do." Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N. W. 2d 250.

"The proximate cause of an injury is that cause which, in the natural and continuous sequence, unaccompanied by any efficient intervening cause, produces the injury, and without which the result would not have occurred." Murray v. Pearson Appliance Store, *supra*.

"(a) No person shall turn a vehicle from the direct course upon a highway unless such movement can be made with reasonable safety, * * * and after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement. (b) A signal of intention to turn right or left shall be given continuously during not less than the last fifty feet traveled by the vehicle before turning." § 39-7,115, R. R. S. 1943.

"A left-hand turn across a public highway between intersections is fraught with danger, and one making such a movement is required to exercise a degree of care

commensurate with the danger." Petersen v. Schneider, 153 Neb. 815, 46 N. W. 2d 355.

When the foregoing is considered in connection with the evidence that appellant told the driver of the Buick "it was his fault" and that at the time of the accident he was looking at his chickens, as he had had several killed, and was not paying too much attention to his driving, we think it sufficient to support a verdict for the appellee.

In this respect we have not overlooked the fact that appellant denies having turned to the left and also denies having made the statements. As to the former, although he admits he intended to turn to the left and into his private lane which leads to his home, he testified he had not reached the point where he intended to do so and therefore had given no signal of his intent nor taken any action to accomplish it. This left a conflict in the evidence as to whether or not he had started to turn into his lane, which conflict was for the jury.

It is appellant's further thought that this case falls into that class of cases in which it is held that when a jury returns a verdict for the plaintiff, but finds that plaintiff is entitled to no damages, it should, in fact, be considered a verdict for the defendant.

Under the proposition already discussed we have come to the conclusion that the evidence is sufficient to support a verdict for appellee as to appellant's liability. This issue was submitted by parts 1 and 2 of instruction No. 3. If the evidence as to damages, which issue was submitted by parts 3 and 4 of instruction No. 3, was such that the jury could properly have found appellee had suffered none then it could properly be said that that part of the jury's verdict was, in fact, for the defendant. See, Rubinson v. Des Moines City Ry. Co., 191 Iowa 692, 182 N. W. 865; Royal Indemnity Co. v. Township of Island Lake, 177 Minn. 408, 225 N. W. 291.

As stated in Royal Indemnity Co. v. Township of Island Lake, *supra*: "The verdict returned by the jury

was: 'We, the jury in the above entitled action, find for the plaintiff and assess damages in the sum of none dollars.' In a case like this, there are usually sent out to the jury two printed forms of verdict—one finding for plaintiff with a blank space therein in which to insert the amount of damages found for the plaintiff; the other a verdict for defendant. The jury used the first form, simply inserting the word 'none' in the blank space. It is clear that the intention of the jury, by the verdict returned, was to find that plaintiff was not entitled to any damages against the defendant. It had the same effect as, and was in fact though not in form, a verdict for defendant. The court might well have had the verdict corrected before being finally received and recorded. It was not however necessary."

In fact, in such case a verdict for the defendant would here have been the proper one under part 3 of instruction No. 3 and merely because the jury, instead of doing so, separated its findings in this regard by the verdict it rendered would not prevent a proper judgment for defendant from being entered thereon. But here the evidence is not of that character. The evidence shows beyond dispute that appellee was injured and suffered damages. If the jury came to the conclusion appellant was liable, appellee would then be entitled to recover therefor. In this situation the trial court was correct in doing what it did when the jury returned its first verdict. Whether or not the amount returned on the second verdict is so inadequate as to justify a new trial we shall consider later in this opinion. However, we do not think appellant's motion for a judgment in his favor, based on the first verdict returned, could or should have been sustained.

Appellee contends it was error to permit appellant to testify as to the speed of the Buick car.

The first basis for this contention is that he should not be permitted to change his testimony in this regard from what it was at a previous trial in another case

arising out of the same accident. In this previous trial, held some 9 or 10 months before, he had testified he was not capable of estimating, with any fair degree of accuracy, the speed of an automobile approaching from the rear when observed through a rear-view mirror and that he could not estimate the speed of the Buick because it was so close when he first saw it he did not have time.

But at the trial he said he thought he could as he had thought it over and now thinks he can tell the speed of an automobile coming up from the rear as he observes it approaching in the rear-view mirror, judging it by the distance of the space closed up between the two automobiles.

The rule is stated in Gohlinghorst v. Ruess, 146 Neb. 470, 20 N. W. 2d 381, as follows: "Where a plaintiff, without reasonable explanation, testifies to facts materially different concerning a vital issue than had previously been testified to by him under oath in another action, the change clearly being made to meet the exigencies of the pending action, the evidence is discredited as a matter of law and should be disregarded."

The evidence here relates to a matter of whether or not he had an opinion. Appellant sought to explain why he felt he could now express an opinion, whereas, at a previous trial, he had not felt capable of doing so. We cannot say the explanation is entirely unreasonable. We think it was a question for the jury to decide. It had before it the record of his previous testimony. Under the situation here we think no error occurred in this regard.

Appellant was permitted to testify that when he first observed the Buick in his rear-view mirror that it was, in his opinion, traveling between 60 and 70 miles an hour. Appellant testified that he first became aware that a car was approaching from the rear when he heard a screaming of brakes on the road; that he then glanced in his rear-view mirror and noticed a large black sedan,

the Buick, right behind him; and that then there was a crash. He also testified that skid marks, made by the Buick, extended south about 96 feet from where it had stopped on the highway; that broken glass was on the highway at a point about 45 feet south of where the Buick had stopped; and that the point of the impact was 45 feet or more south of his private driveway. The evidence shows the Buick stopped on the highway at about the south edge of appellant's private driveway, if extended. It was mostly west of the center of the highway and was facing northeast.

The rule governing has often been stated by this court. As stated in Fairman v. Cook, 142 Neb. 893, 8 N. W. 2d 315: "Where it appears that a witness had no reasonable time, means, distance, or opportunity to formulate a basis for an opinion as to the speed of a car, the testimony of such witness is insufficient to sustain a finding of excessive speed in the absence of other evidence on the subject."

And in the recent case of Kristufek v. Rapp, 154 Neb. 343, 47 N. W. 2d 923, we said: "Where it appears that a witness had no opportunity to formulate a basis for an opinion as to its speed, it is error to permit the giving of an estimate."

Considering this evidence in its most favorable light it shows that during the time the Buick traveled less than 50 feet at an admitted speed of 50 to 60 miles an hour appellant first became aware it was behind him by hearing the screaming of its tires on the road, that he then glanced into his rear-view mirror and observed the car right behind him, and that the crash occurred. We still think, as appellant testified in the previous trial, that it was so close when he first observed it he did not have time or opportunity to estimate its speed. In this respect we have not overlooked our holding in Koutsky v. Grabowski, 150 Neb. 508, 34 N. W. 2d 893. While the situation involved in that case is somewhat similar to the situation here, nevertheless we think the

facts considered therein distinguishes it from the case before us.

The appellee also contends the court erred in permitting the appellant to impeach appellee's witness Mary Alice Ambrozi, driver of the Buick, on an immaterial and collateral matter.

"It is only as to matters relevant to some issue involved in a case that a witness can be contradicted for the purpose of impeachment." Carpenter v. Lingenfelter, 42 Neb. 728, 60 N. W. 1022, 32 L. R. A. 422.

"A witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issues, for the purpose of contradicting him by other evidence if he should deny it, thereby discrediting his testimony." Nickolizack v. State, 75 Neb. 27, 105 N. W. 895.

"The general rule is that a witness cannot be impeached as to collateral or immaterial matter brought out on cross-examination; * * *." Abbott's Civil Jury Trials (5th ed.), § 157, p. 364.

On cross-examination this witness was asked: "Q. I will ask you if you had a conversation at the jail house with Mrs. Bernard Sloey? A. Yes, sir. Q. And I will ask you if you had a conversation with Mrs. Bernard Sloey in which you stayed (stated) that you had been driving the automobile at a rate of speed of about 80 miles per hour at some time prior to the accident but just before the accident had slowed up to about 60 miles an hour? A. No, sir."

Mabel Sloey, over proper objection, testified: "She (Mary Alice Ambrozi) said that if it had happened back in Kansas where she had been driving about 80 miles an hour she wouldn't be so surprised, but she had slowed to around 60 when she hit Nebraska."

Without doubt the testimony as to what speed she had been driving in Kansas was immaterial. See, Prince v. Petersen, 144 Neb. 134, 12 N. W. 2d 704; Showers v. Jones Co., 126 Neb. 604, 253 N. W. 902.

As stated in Prince v. Petersen, supra: "The rule of

these cases is hereby approved but the discretion therein contemplated does not permit the admission of evidence of speed at other points unless the points are of such close proximity that a reasonable inference could be drawn that it was continued to the point of accident, or unless, if more remote, there is evidence of fact or circumstance from which a reasonable inference could be drawn that speed was continued at approximately the same rate over the intervening distance."

However, the testimony that she had slowed to around 60 miles an hour when she hit Nebraska does not fall into this same category. She had testified that her speed in Nebraska was between 50 and 60 miles an hour and that she was traveling at that speed as she came up behind appellant's car and pulled out to pass. The issues submitted included the question of Mary Alice Ambrozi's negligence and, if she was negligent, whether it was the sole proximate cause of the accident. In respect to this issue the speed at which she was driving the Buick was material and certainly not a collateral issue. On proper motion part of this testimony should have been stricken but no such motion was made. We find this contention to be without merit.

Both parties refer to the question of the inadequacy of the verdict as the basis on which the trial court granted a new trial.

"The rule is, viz.: 'When the amount of the damages allowed by a jury is clearly inadequate under the evidence in the case, it is error for the trial court to refuse to set aside such verdict.' Preston v. Farmers Irrigation District, 134 Neb. 503, 279 N. W. 298. See, also, Meier v Bridgeport Irrigation District, 113 Neb. 344, 203 N. W. 543; Mares v. Chaloupka, 110 Neb. 199, 192 N. W. 397." Dolen v. Beatrice Restaurant Co., 137 Neb. 247, 289 N. W. 336.

We have also said: "* * * where the recovery awarded is sufficient to probably do justice to the injured party,

an appellate court should not interfere." Cronin v. Cronin, 94 Neb. 353, 143 N. W. 214.

We have carefully examined the evidence in regard to medical expenses, loss of earnings, pain and suffering, and disability suffered. Without setting it out in detail we have come to the conclusion that if appellant is liable the amount of $75 is so grossly inadequate that the trial court was right in awarding a new trial. While a jury could properly find that the fracture to the bone in appellee's left wrist was not caused by the accident, we think, however, that the other injuries suffered, particularly to her right hand, made the award entirely inadequate.

Having come to the conclusion that the trial court was correct in awarding appellee a new trial, we affirm its action in doing so.

AFFIRMED.