WARREN H. GROSS. APPELLANT, V. DENNIS S. JOHNSON ET AL., APPELLEES.

117 N. W. 2d 534

Filed October 26, 1962. No. 35182.

Kennedy, Holland, DeLacy & Svoboda, Joseph P. Cashen, and Clarence E. Heaney, Jr., for appellant.

Haney & Walsh, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

Warren H. Gross, plaintiff, brought this action in the district court for Douglas County against Dennis S. Johnson and Marvin Johnson, defendants, to recover damages for injuries sustained by the plaintiff as a result of a collision between an automobile driven by the plaintiff and an automobile driven by Dennis S. Johnson, defendant. Marvin Johnson, defendant, died during the pendency of the action and by order of the court the action was revived in the name of Eileen A. Johnson as administratrix of the estate of Marvin Johnson, deceased. The case was tried to a jury resulting in a verdict for the plaintiff in the amount of $1,998.62. The plaintiff filed a motion for new trial. The defendants, Dennis S. Johnson and Eileen A. Johnson, filed a motion for judgment notwithstanding the verdict. The plaintiff's motion for new trial and the defendants' motion for judgment notwithstanding the verdict were overruled. The plaintiff perfected appeal to this court.

The first question to determine is whether or not the evidence adduced at the trial was such that the question of the defendants' negligence or of the plaintiff's contributory negligence should have been submitted to the jury.

There is no dispute by the parties that a collision occurred on November 25, 1958, at approximately 7:50 a.m., at the intersection of Thirty-third and Hickory Streets in Omaha, between a 1958 Volkswagen automobile operated by Dennis S. Johnson and a 1956 Plymouth

automobile operated by the plaintiff; that Thirty-third Street is protected by stop signs; and that vehicles approaching the intersection on Hickory Street from the west are required to stop before entering the intersection.

The plaintiff, in his petition and the amendment thereto, alleged in the amendment that the Volkswagen driven by Dennis S. Johnson was a family-purpose automobile. The petition further alleged that the accident and plaintiff's injuries were caused solely and proximately by the recklessness and negligence of the defendant Dennis S. Johnson in the following particulars: In failing to keep a proper lookout for northbound traffic on Thirty-third Street and particularly the automobile operated by the plaintiff; in failing to keep defendants' vehicle under proper control; in failing to yield the right-of-way to the plaintiff's vehicle; in traveling at a high and excessive rate of speed; in failing to stop for a stop sign governing eastbound traffic on Hickory Street entering the intersection at Thirty-third and Hickory Streets; in failing to make timely application of the brakes on the Volkswagen that would enable the driver to avoid a collision with another automobile assuming that the driver thereof was exercising due care; and in failing to swerve or divert the course of the automobile so as to avoid a collision with the plaintiff's automobile assuming that the driver thereof was exercising due care. The plaintiff further alleged that as a direct and proximate result of the negligence of Dennis S. Johnson the resulting collision caused the plaintiff to sustain severe, painful, and permanent injuries, expenses for doctor bills, hospital bills, ambulance service, loss of wages, and damage to his automobile for which he prayed damages.

The defendants, in their amended answer, denied every allegation contained in the plaintiff's petition except the allegations of the petition admitted in such answer to be true. The defendants, in their amended answer, denied that the accident occurred as a result of

any conscious negligence on the part of the defendants. The defendants further alleged that said accident, in addition to any acts committed by the defendant Dennis S. Johnson, was due to the negligence of the plaintiff in the method and manner in which the plaintiff operated his automobile at the time and place of the collision; and that the negligence of the plaintiff was more than slight and directly contributed to the happening of the collision. The defendants prayed that the plaintiff's petition be dismissed.

The plaintiff's reply to the defendants' amended answer denied every allegation contained therein except as admitted to be true by the plaintiff's petition.

For convenience we will refer to Dennis S. Johnson as defendant. Eileen A. Johnson was the co-owner with Marvin Johnson, now deceased, of the Volkswagen driven by Dennis S. Johnson, and no further mention need be made of the defendant Eileen A. Johnson. Warren H. Gross will be referred to as plaintiff, his automobile as the Plymouth, and the automobile driven by Dennis S. Johnson as the Volkswagen.

The record shows that Thirty-third Street is 24 feet wide and Hickory Street is 24 feet wide. There are stop signs on either side of Hickory Street to protect drivers on Thirty-third Street proceeding north or south. The speed limit on both streets is 25 miles an hour. Both streets are level and straight. Thirty-third Street runs north and south, and Hickory Street runs east and west and is straight as it proceeds west from the intersection. There is a slight jog of 34 inches as Hickory Street goes in from the west which is of little consequence in this case. Hickory Street is paved with asphalt and Thirty-third Street is paved with brick. On the day of the accident the weather was cloudy and it was misting. The surface of both streets was wet. Along the west side of Thirty-third Street running south is a hedge which also runs west from the southwest corner of Hickory

Street. The height of this hedge from the level of the street is 54 inches.

A police officer connected with the traffic division investigated the accident which occurred in the intersection of Thirty-third and Hickory Streets, and made a report of the accident within an hour from the time of its occurrence. When he arrived at the scene of the accident he found the Volkswagen driven by the defendant and the Plymouth driven by the plaintiff. He testified that the Plymouth was located approximately 10 to 15 feet north of the curb of Hickory Street on Thirty-third Street, facing in a northeasterly direction. This witness ascertained the approximate point of impact of the Plymouth and the Volkswagen by debris and skid marks in the street. The skid marks were laid down by the Volkswagen and were 5 feet 6 inches in length. The debris was 7 feet 6 inches from the north curb of Hickory Street and 12 feet from the east curb of Thirty-third Street, which would be approximately at the centerline of the intersection. The skid marks extended from the west up to that point. This witness further testified that he had a conversation with the defendant. The defendant said that he applied his brakes but due to the wet street he was unable to stop. This witness also had a conversation with the plaintiff in the hospital. The plaintiff said his speed was 15 to 20 miles an hour, and that he was going north on Thirty-third Street and did not see the Volkswagen until the collision occurred. On cross-examination this witness testified that there are stop signs on the northeast and southwest corners of the intersection of Thirty-third and Hickory Streets; and that he saw no evidence that the plaintiff had applied his brakes. On redirect examination this witness testified that the defendant stated that he was eastbound on Hickory Street when he approached Thirty-third Street and slowed down but did not see anything coming until he was within 10 or 12 feet of the plaintiff's Plymouth.

The plaintiff testified that he was employed by the Missouri Pacific Railroad Company as a reclaim clerk. He was familiar with the intersection of Thirty-third and Hickory Streets, and had traveled through it regularly since August 1958. On the morning of the accident, he started to work at 7:30 a.m. He proceeded north on Thirty-eighth Street to Martha Street, then proceeded east to Thirty-third Street and then north on Thirty-third Street. He testified that there is a hedge located just inside of the sidewalk line on the southwest corner of the intersection; that the sidewalk sits back approximately 3 feet from the west curb of Thirty-third Street, and the sidewalk is 3 or 4 feet wide; that the distance between the curb line and the sidewalk is 3 or 4 feet; and that the hedge was free of foliage at the time of the accident. This witness further testified that there are trees located in the parkway between the sidewalk and the curb west of Thirty-third Street on the south side of Hickory Street. On the morning of the accident, as he neared the intersection of Thirty-third and Hickory Streets, he was traveling between 15 and 20 miles an hour. He looked first to his right (east) and then to his left (west) at the time he was 30 to 35 feet back from the intersection. He testified that when he looked to the left, or west, he could see about 90 feet, and he saw nothing coming from the west. He proceeded into the intersection at a speed of 15 to 20 miles an hour, and as he was leaving the intersection and the front of his Plymouth was close to the north curb line, he looked to the west and saw the Volkswagen coming down upon him, it being about a car length to his left, or west. The Plymouth was hit immediately on the left side at the doorpost between the front and rear doors, causing the Plymouth to swerve to the east over the curb, and its right wheel to hit a telephone pole. The Plymouth then whipped around to the northeast and came to a stop 6 to 8 feet north of the north curb line of Hickory Street, facing northeast. Exhibits received in evidence

disclose that the Volkswagen came to rest on Hickory Street just east of Thirty-third Street, facing in a southerly direction.

A witness who was driving south on Thirty-third Street at the time of the accident testified that just before he entered the intersection he saw a Volkswagen approaching Thirty-third Street from the west on Hickory Street. The Volkswagen's left wheels were right at the centerline of Hickory Street. He observed a car parked at the south curb about 20 feet to the west of the stop sign. When he first saw the Volkswagen it was about 30 feet from the entrance to the intersection. The Plymouth was just ready to enter the intersection from the south on Thirty-third Street. He estimated the speed of the Plymouth to be not in excess of 20 miles an hour. When he first saw the Volkswagen, this witness' car was 12 feet or more from the north curb of Hickory Street. This witness further testified that he had the Volkswagen in his vision from the point about 30 feet prior to entering the intersection until it actually made contact with the Plymouth; that the Volkswagen did not come to a stop prior to entering the intersection; that at the time of the impact the Plymouth was in the east line of traffic just over the centerline of Hickory Street; and that it seemed to him that the front of the Volkswagen struck near the center or a little to the rear of the left side of the Plymouth. This witness estimated the speed of the Volkswagen as being in excess of 40 miles an hour, and testified that the defendant, prior to the time of the impact, did not diminish his speed. On cross-examination this witness testified that the impact occurred predominantly in the southeast quarter of the intersection; and that he did make a statement that the stop sign was very difficult to see unless you knew where it was.

The defendant testified that at the time of the accident he was under 21 years of age and was on his way to work; that he was proceeding east on Hickory Street

at a speed of 20 to 25 miles an hour; that he was driving on his own side of the street; that when he was about 60, 65, or 70 feet to the west of the intersection he observed to his left that there was no traffic coming from that direction; that he then looked to the right, or south, and observed that there was a hedge; that as he approached the intersection there was a car parked south and west of the curb line on Hickory Street; that he had to turn out for this car because it was parked against the curb; that if there was an imaginary centerline on Hickory Street, he was approximately 6 inches south of that line; and that he proceeded on, still looking to the right, or south, but was unable to see anything coming from the south on Thirty-third Street because the hedge was blocking his view. This witness further testified that when he was just even with the hedge line, close to the intersection of Thirty-third and Hickory Streets, he saw the stop sign, the Plymouth, and "everything all at one time." His speed at that time was 18 to 20 miles an hour. He further testified that the front end of the Plymouth was about even with a tree on the east side of Thirty-third Street south of the intersection; that when he saw the Plymouth he slammed on the brakes; and that his speed at the time of the impact was 8 to 10 miles an hour. This witness further testified that the Plymouth did not slow down from the moment he saw it until the time of the impact; that he saw the driver of the Plymouth as it was proceeding northward to the point of impact, and the driver was looking to the north and never turned his head to the left (west) or right (east) before the impact; and that the Plymouth was traveling 6 or 8 inches east of the middle line of Thirty-third Street. This witness was able to get the Volkswagen turned to the left, but very little. This witness further testified that the front end of the Volkswagen contacted the Plymouth between the two doors on the left side of the Plymouth; that the front bumper of the Plymouth, with respect to the centerline of Hickory

Street, at the moment of impact was 2 or 3 feet north of the centerline; that the estimated speed of the Plymouth was 30 to 35 miles an hour; and that on the day of the accident the stop sign faced due west, but now it is tilted, which helps visibility, but not too much. The defendant further testified that he had never been on Hickory Street at Thirty-third Street before the morning of the accident.

The record established that the Volkswagen driven by the defendant was a family-purpose automobile.

This court has held as follows: "A motorist traveling on a favored highway protected by a stop sign of which he has knowledge may properly assume that oncoming traffic will obey it. * * * A user of highways may assume that other users thereof will use them in a lawful manner and govern his acts in accordance with such assumption unless or until he has warning, notice, or knowledge to the contrary. * * * A motorist approaching a highway protected by stop signs must stop before going upon the highway, must look to his left and to his right, and must permit a motor vehicle which is proceeding along the highway protected by stop signs to pass if it is at a distance and is traveling at a speed making it imprudent for the motorist to proceed into the intersection. * * * The duty of a motorist to look for vehicles approaching on a highway protected by stop signs implies the obligation to see what is in plain view." Nichols v. McArdle, 170 Neb. 382, 102 N. W. 2d 848.

The word "highway," insofar as the rules above stated are concerned, applies to streets as well as highways.

In Bell v. Crook, 168 Neb. 685, 97 N. W. 2d 352, 74 A. L. R. 2d 223, this court said: "An arterial highway is not deprived of its character or status because a stop sign on an intersecting road is temporarily displaced or otherwise rendered invisible." Cases are cited establishing the rule.

The defendants rely on the recent case of Hammon v. Brazda, 173 Neb. 1, 112 N. W. 2d 272, wherein this

court held: "A motorist proceeding in the exercise of ordinary care cannot be held negligent in failing to stop at an intersection with an arterial highway with which he is not familiar, where the stop sign protecting the arterial has been broken off and he could not be expected to be aware of its presence." The opinion went on to say that this case differs from Bell v. Crook, *supra,* for the reason that therein the driver on the nonfavored road knew that a stop sign ordinarily protected the arterial highway and that the sign was down, and we held: " 'If a motorist knows of the through character of a highway, the presence or absence of warning signs is immaterial as respects his negligence in failing to yield the right-of-way.'

"There are some cases in other jurisdictions which hold the nonfavored driver guilty of negligence as a matter of law regardless of lack of knowledge. Titus v. Braidfoot, 226 Ala. 21, 145 So. 423, and Jones v. McCullough, 148 Kan. 561, 83 P. 2d 699, are two of them.

"We believe, however, the better rule is the one represented by cases such as Schmit v. Jansen, 247 Wis. 648, 20 N. W. 2d 542, 162 A. L. R. 925; Chambers v. Donaldson, 122 Cal. App. 2d 452, 264 P. 2d 950; Mason v. Yellow Cab & Baggage Co., 153 Tex. 344, 269 S. W. 2d 329; and Lyle v. Fiorito, 187 Wash. 537, 60 P. 2d 709.

"Without attempting to analyze the conflicting views, we hold that a motorist proceeding in the exercise of ordinary care cannot be held negligent in failing to stop at an intersection with an arterial highway with which he is not familiar, where the stop sign protecting the arterial has been broken off and he could not be expected to be aware of its presence."

The evidence discloses that the defendant was driving east on Hickory Street toward the intersection of Thirty-third Street at a speed of 20 to 25 miles an hour, which was the lawful rate of speed on Hickory Street and in that area. As the defendant approached to a distance of 60 or 70 feet west of the intersection, he looked

to his left for approaching automobiles. He then looked to his right, or south, and saw a hedge located on the southwest corner of the intersection which tended to obstruct his vision to the south on Thirty-third Street. Then he saw a car parked on the south side of Hickory Street just east of the sidewalk located approximately 55 feet west of the intersection. The defendant had never been on Hickory Street proceeding toward Thirty-third Street and this intersection prior to the accident. The evidence also shows that there was a tree that tended to obstruct or interfere with his vision to the south, and this tree was located about 7 feet west of the stop sign. The defendant was unaware that there was a stop sign located at the southwest corner of the intersection. There is evidence to the effect that the defendant turned the Volkswagen to go around the parked car and then commenced to reduce his speed; that as he passed the parked car he was still proceeding on the south side of Hickory Street with the left side of the Volkswagen approximately 6 inches south of an imaginary center-line of Hickory Street. As the defendant neared the hedge located on the southwest corner of the intersection, he saw the stop sign and the plaintiff's Plymouth approaching the intersection from the south, and attempted to turn the Volkswagen to the left. The Volkswagen skidded on the wet pavement a distance of 5 feet 6 inches. There is evidence from which the jury could find that the plaintiff was driving his Plymouth north on Thirty-third Street at a rate of speed of 30 to 35 miles an hour, which was beyond the lawful speed limit of 25 miles an hour in that area; that the plaintiff did not reduce his speed or attempt to turn the Plymouth, or apply his brakes as he approached the intersection; and that the plaintiff could not see the Volkswagen until the collision occurred. There is also evidence that the defendant was traveling 40 miles an hour and did not diminish his speed; and that the stop sign was difficult to see unless you knew it was located on that corner.

Considering the evidence in its entirety, the questions of negligence on the part of the defendant and contributory negligence on the part of the plaintiff were for the jury to determine.

"Where different minds may reasonably draw different conclusions or inferences from the adduced evidence, or if there is a conflict therein, as to whether or not the evidence establishes negligence or contributory negligence, and the degree thereof, when one is compared with the other, such issues must be submitted to a jury. * * * It is the province of the jury to harmonize the testimony insofar as that is possible, and in case of conflict to decide as to the weight to be given the testimony of the various witnesses." Klein v. Wilson, 167 Neb. 779, 94 N. W. 2d 672.

This brings us to the question presented by the plaintiff that the verdict is totally inadequate. This assignment of error goes to the injuries sustained by the plaintiff as the result of the collision.

A plastic surgeon testified that the plaintiff received multiple contusions and lacerations to the face and hand, including a transverse laceration of the right cheek that extended posteriorily through the ear and on to the scalp adjacent to the ear; and that the total length of this laceration was about 13 centimeters, or a little less than 6 inches. This laceration was approximately half an inch deep and involved the right parotid gland and seventh cranial nerve. The doctor further testified that as a result of this laceration there was a weakness of the muscles of the eyelid and inability to move the muscles of the forehead on the right side. The doctor sewed the laceration together on the morning of the accident and put a special dressing over the face so that the plaintiff's mouth could only open about half an inch. The plaintiff was seen a few times by the doctor up until March 28, 1959. The doctor gave as his opinion that the plaintiff, at the time of trial, had reached about maximum improvement.

A neurologist testified that he found a decreased sensation throughout the major portion of the right side of the plaintiff's face due to an involvement of the fifth cranial nerve, which he described as producing a sensation similar to that of one having received a novocain injection. This doctor further testified that he found damage to the seventh cranial nerve, resulting in loss of motor power in the plaintiff's right forehead, and damage to the fifth and seventh cranial nerves which would or could be permanent in nature.

There is some evidence that about three months subsequent to the accident the plaintiff suffered headaches, some of them for a short period of time and others of a severe nature for a longer period of time. There is testimony by a physician called by the defendants to the effect that these headaches could not have been attributed directly to the accident, but could be the result of tension on the part of the plaintiff due to his concern over the scar on his face. This doctor concluded that the plaintiff had residuals of injury to the nerve supplying the muscles of the upper part of the face, resulting in a moderate right upper facial weakness, and he felt that the plaintiff might have had some involvement of the sensory nerves, that is, the feeling nerves, to the right side of the head and face. He felt that the sensory nerve changes would not be entirely due to nerve injury. He concluded that the motor nerve involvement and weakness probably would not improve; that any part of the sensory change which is truly organic probably would not improve; and that a rather large part of the sensory change was functional and could be cleared up in time.

The plaintiff's contention is that the verdict of the jury was the exact amount of special damages, minus a bill of Dr. Ladwig for $80. The plaintiff sets forth that the undisputed evidence established that the special damages were as follows: Drs. Dunn and Hubbard, $20; Dr. Black, $285; Douglas County Hospital, $3.50; Omaha Ambulance Service, $10; Bishop Clarkson Me-

morial Hospital, $171.25; 1956 Plymouth Automobile, $1,-225; Dresher Cleaners, $5.70; and loss of wages, $278.17. The total as set forth by the plaintiff was $1,998.62.

The plaintiff's Plymouth was demolished to such a degree that the salvage price was estimated at about $185, while the retail value was appraised at $1,410, making the loss $1,225.

With reference to Dr. Black's bill, $25 was a charge for a report made to the plaintiff's attorneys which should not have been included in the bill. Therefore, Dr. Black's bill would be $260.

With these deductions, the total of the special damages should be $1,973.62, making a difference of $25.

The plaintiff testified that he remained in the hospital for a period of 5 days; that it was a month after the accident before all the bandages were taken off of his face; that he first returned to work on December 15, 1958, that is, he was not at work from November 25, 1958, until December 15, 1958; and that it was 6 months before he was able to do the work which he had done prior to the time of the accident.

In instruction No. 20 given by the trial court, the jury was told to consider: "1. The character and extent of the injuries, if any, and whether the evidence shows with reasonable certainty that any are permanent and will continue to exist in the future to the fullest extent, or only partially, or whether his injuries were only temporary ones from which he will recover; 2. Such pain and suffering of body and mind as you may find, from a preponderance of the evidence, that the plaintiff has sustained by reason of this accident; 3. Such pain and suffering of body and mind as you may find, from a preponderance of the evidence, the plaintiff is reasonably certain to suffer in the future by reason of injuries sustained in this accident; * * *." Other parts of the instruction dealt with medical bills, loss of wages, ambulance charges, etc.

This court held in Dolen v. Beatrice Restaurant Co.,

137 Neb. 247, 289 N. W. 336: "When the amount of damages allowed by a jury is clearly inadequate under the evidence in the case, it is error for the trial court to refuse to set aside such verdict."

In Schumacher v. Lang, 160 Neb. 43, 68 N. W. 2d 892, this court said: "We have now definitely established the rule that: 'When the amount of the damages allowed by a jury is clearly inadequate under the evidence in the case, it is error for the trial court to refuse to set aside such verdict.' Ambrozi v. Fry, 158 Neb. 18, 62 N. W. 2d 259. * * * As this record stands, it would have been an abuse of discretion for the trial court to have refused to set aside the verdict and grant a new trial." Cases are cited in this opinion with somewhat similar factual situations where the court came to a like conclusion.

We deem the aforesaid authorities controlling in this case.

The plaintiff predicates error on the giving of certain instructions which need not be considered here except to say that in instruction No. 8 given by the trial court, the trial court told the jury in a part of this instruction: "It is the duty of a driver of a motor vehicle to keep a constant lookout in the direction of anticipated danger." The word "constant" means remaining unchanged, and steady. See Webster's Third New International Dictionary. This instruction would indicate to the jury that the plaintiff should have looked continuously to the left, or south. It could be true that the plaintiff could have anticipated danger from the right, or from either or both directions. The word "constant" as used in the instruction is not proper and should not have been used in the connection in which it was used.

In the light of the evidence and the authorities heretofore cited, we conclude that the judgment of the trial court should be reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.