Alton R. WRIGHT, Special Administrator of the Estate of Tommy Lee Wright, Deceased, Appellant,

v.

Gailen D. HOOVER and Earl R. Hoover, Appellees.

No. 17366.

United States Court of Appeals Eighth Circuit.

March 13, 1964.

Rehearing Denied April 7, 1964.

Warren C. Schrempp and Richard J. Bruckner, of Schrempp, Lathrop & Rosenthal, Omaha, Neb., Lawyer, Lawyer & Ray, Des Moines, Iowa, and Schrempp, Lathrop & Rosenthal and Richard J. Bruckner, Omaha, Neb., on the brief, for appellant.

William P. Mueller, of McGinley, Lane, Mueller & Shanahan, Ogallala, Neb., for appellees.

Before VAN OOSTERHOUT, MATTHES and MEHAFFY, Circuit Judges.

MATTHES, Circuit Judge.

Plaintiff has appealed from an adverse judgment entered upon a jury verdict, in a wrongful death action. Jurisdiction is established by diversity of citizenship and the requisite amount in controversy.

Tommy Lee Wright, plaintiff's decedent, was two years and three months old on September 1, 1960, the date he died as the result of fatal injuries sustained in the automobile collision giving rise to this action. In their amended answer to plaintiff's complaint, defendants admitted liability. The case being thus posited, the evidence was brief, was introduced almost entirely by plaintiff, and was directed to the only issue submitted to the jury—i. e., the pecuniary loss, if any, sustained by plaintiff as a result of the death of his decedent.

In summary, the evidence proved that at the time of trial (February 4, 1963), Alton R. Wright (plaintiff), who was the father of Tommy (deceased) and who was also the Special Administrator, was twenty-eight years of age. Tommy was a normal child, mentally and physically, and was one of five children. Alton "quit" school when he was fifteen years old and in the ninth grade; he was eighteen years old when he married a girl who was at that time in the sixth grade.[1] Alton, a citizen of California at the time of trial, was in the automobile body and fender shop business in that state, but there was no evidence as to his income. He testified that to some extent he contributed to the support of his parents.

1. At the time of trial, Alton's wife (Tommy's mother) was also deceased.

The mortality table was introduced to establish that the life expectancy of a man twenty-six years of age (Alton's age at the time of Tommy's death) was 44.90 years and that the life expectancy of a child two years was 66.90 years.

The automobile accident occurred in the State of Nebraska, and the law of that state controls. The court instructed the jury that defendants had admitted legal liability for the death of Tommy, and that the "only issue remaining for you to determine is the amount of the pecuniary loss, * * * if any, that the plaintiff is entitled to recover." The jury was fully and properly instructed as to the standards to be applied by them in resolving that issue. No exceptions were taken by plaintiff's counsel to the instructions. The jury's verdict returned on the form submitted by the court without objection by plaintiff, reads as follows:

"We, the Jury, assess damages at the sum of none Dollars ($ none)."

After plaintiff had unavailingly moved for a new trial, he perfected an appeal to this court.

In effect, plaintiff's basic contention is that where, as here, defendants admit legal liability for the death of plaintiff's decedent, where such decedent is a normal, healthy child of tender years, where he is survived by one entitled to his support and services, and where there is no evidence to rebut the presumption of pecuniary loss, a verdict allowing "no damages" cannot, as a matter of law, stand, and, consequently, the denial of a motion for new trial constitutes an abuse of discretion.

 As a reviewing court in a diversity action, we are compelled to follow the dictates of the controlling Nebraska law. By virtue of such law: (1) Generally, in a wrongful death action, the measure of damages is limited to the *pecuniary* loss sustained by the statutory beneficiaries. Darnell v. Panhandle Cooperative, 175 Neb. 40, 120 N.W.2d 278, 286 (1963); Kroeger v. Safranek, 161 Neb. 182, 72 N.W.2d 831, 840–841 (1955); see also, Thevenot v. Sieber, S.D.N.Y., 204 F.Supp. 15, 16 (1962) (involving Nebraska law); (2) Where the deceased is an unemancipated child, such pecuniary loss is that which—measured by the present value of a dollar—will be sustained by the parent by reason of being deprived of the child's services during his minority, and the loss of contributions, if any, having monetary value that might reasonably be expected to be made by the child after reaching his majority. Bailey v. Spindler, 161 Neb. 563, 74 N.W.2d 344, 351 (1956); Shields v. County of Buffalo, 161 Neb. 34, 71 N.W.2d 701, 714–715 (1955); Forrest v. Masters, 158 Neb. 506, 63 N.W.2d 777, 780 (1954); Dorsey v. Yost, 151 Neb. 66, 36 N.W.2d 574, 14 A.L.R.2d 544 (1949); Fisher v. Trester, 119 Neb. 529, 229 N.W. 901 (1930); Draper v. Tucker, 69 Neb. 434, 95 N.W. 1026, 1028 (1903); (3) In calculating the pecuniary loss to the parent, the amounts which would have been expended for the child's maintenance and support are deducted from the monetary value of the child's services and contributions. Shields v. County of Buffalo, supra, 71 N.W.2d at 714; Forrest v. Masters, supra, 63 N.W.2d at 780; Dorsey v. Yost, supra, 36 N.W.2d at 575–576; (4) Pain, anguish, loss of society and companionship are not ordinarily proper elements of pecuniary loss. In Re Lucht's Estate, 139 Neb. 139, 296 N.W. 749, 752 (1941); Dow v. Legg, 120 Neb. 271, 231 N.W. 747, 748–749, 74 A.L.R. 5 (1930); Elliott v. City of University Place, 102 Neb. 273, 166 N.W. 621, 622 (1918); (5) Fixing of damages in a wrongful death action is peculiarly within the province of the jury, and its award will be sustained unless it manifestly appears that the finding was the result of passion, prejudice or mistake. Mabe v. Gross, 167 Neb. 593, 94 N.W.2d 12, 16–17 (1959); Shields v. County of Buffalo, supra, 71 N.W.2d at 715; Dorsey v. Yost, supra, 36 N.W.2d at 575–576. Compare also, Cooper v. Hastert, 175 Neb. 836, 124 N.W.2d 387 (1963); (6) While the law does not provide any positive, definite mathematical formula or legal rule by which a jury shall fix the

pecuniary loss, the jury must take into consideration the condition of the parties —including the health, physical condition, income, and life expectancy of the parent, and all of the circumstances disclosed by the evidence. Fisher v. Trester, supra, 229 N.W. 901; Armstrong v. Union Stock Yards Co., 93 Neb. 258, 140 N.W. 158, 160 (1913); Crabtree v. Missouri Pac. R. Co., 86 Neb. 33, 124 N.W. 932, 934–935 (1910). Compare also, Kroeger v. Safranek, supra, 72 N.W.2d at 841; Tate v. Barry, 144 Neb. 517, 13 N.W.2d 879, 883 (1944); (7) A presumption of pecuniary loss exists in favor of one legally entitled to service or support from one killed by the wrongful or negligent act of another. Mabe v. Gross, supra, 94 N.W.2d at 16–17; Kroeger v. Safranek, supra, 72 N.W.2d at 841; Killion v. Dinklage, 121 Neb. 322, 236 N.W. 757, 759 (1931), overruled on other grounds, Schrage v. Miller, 123 Neb. 266, 242 N.W. 649, 654 (1932).

█ With these general principles before us, and having carefully reviewed the pertinent Nebraska authorities, we are compelled to affirm the decision below. Certainly a verdict cannot be based on mere speculation or conjecture, but—

"It is for the jury to determine the pecuniary value of the child's services which would have accrued to the parent but for the accident. The amount to which a parent is entitled cannot be accurately determined because of the numerous contingencies involved. The amount being very problematical, it is peculiarly for the jury to determine, after hearing all the evidence bearing upon the situation * * *. Members of juries generally have children of their own and have information as to the pecuniary value of children's services and the expense involved in their care and education. A jury is pe-

culiarly fitted to determine the loss sustained by a parent in such a case. At best, the verdict can only be an approximation as no yardstick exists by which the correct answer can be found with exactness." Dorsey v. Yost, supra, 36 N.W.2d at 575–576.

Here, the record does not show directly or inferentially that the jury was improperly influenced or that it acted beyond the scope of its powers. Thus, the alleged injustice of the jury verdict of "no damages" does not "have merit as a basis for a new trial." 36 N.W.2d at 576.

█ But appellant (plaintiff) argues that in view of the "presumption of pecuniary loss" to the father, the failure of the jury to find damages for appellant required the court to set aside the verdict and to grant a new trial, since appellees (defendants) "did not attempt to rebut or overcome the presumption of pecuniary loss of contribution by the appellant and appellant, therefore, sustained his burden of proof as to loss of contribution." In our view, under a factual situation such as the one before us, the "presumption" allows the case to go to the jury upon very meager and uncertain evidence, and may be sufficient to sustain a verdict and judgment awarding substantial damages, without proof of actual loss. See Mabe v. Gross, supra, 94 N.W.2d at 15–17. However, the "presumption of pecuniary loss" only applies to the child's expected contributions or services of monetary value, and it is still for the jury to determine the extent to which such presumed loss is offset by the amount which would have been expended for the deceased child's maintenance and support. Here, undoubtedly, the jury determined that the costs of raising the child would have outweighed the child's monetary contributions to the father.[2]

2. The trial court instructed the jury:
"You may also consider the circumstances of the father, his occupation and station in life, the relationship of the parties, and from all of these factors determine what the father may probably

expect in the way of support and contribution during his lifetime, deducting therefrom the cost and expenses which he, the father, with reasonable certainty, would have incurred for food, clothing, shelter, education, and other items which

■ Likewise, there is no merit to appellant's assertion that Bushey v. French, 171 Neb. 809, 108 N.W.2d 237 (1961), is decisive and demands reversal for a new trial because "a verdict of 'no damages' is neither a verdict in favor of the plaintiff nor a verdict in favor of the defendant, and is in effect, no verdict at all." As pointed out in the trial court's unreported post-trial memorandum opinion,

"The two cases [Bushey and the instant case] are not the same. The form of verdict submitted in this case was not a form of verdict for plaintiff. * * * [T]he words 'for plaintiff' had been stricken both at the top and in the body of the verdict. The statement in Bushey to the effect that from the verdict it was impossible to tell whether the jury intended to find for plaintiff or defendant is inapplicable.

\* \* \* \* \* \*

. "Where there was but one thing to be determined by the jury [in the instant case], namely, the pecuniary loss, if any, one form of verdict was all that was needed. The directions of the court * * * as to how it should be filled in were certainly not in any way misleading to either of the parties or to the jury." [3]

See also, Wingerter v. Maryland Casualty Co., 5 Cir., 313 F.2d 754 (1963).

■ Neither are we impressed by appellant's additional contention that a new trial should be granted because the trial court erroneously sustained an objection preventing appellant from testifying as to his intentions for educating the child in the future. See Piechota v. Rapp, 148 Neb. 442, 27 N.W.2d 682, 687 (1947).

Nebraska cases dealing with excessive or inadequate damage awards can be cited pro and con—some reversing a jury award as inadequate, i. e., Gross v. Johnson, 174 Neb. 273, 117 N.W.2d 534 (1962); Ambrozi v. Fry, 158 Neb. 18, 62 N.W.2d 259 (1954); Draper v. Tucker, supra, 95 N.W. 1026;—some reversing an award as excessive or requiring remittitur, i. e., Fisher v. Trester, supra, 229 N.W. 901; Trute v. Holden, 118 Neb. 449, 225 N.W. 238 (1929); Ramirez v. Chicago, B. & Q. R. Co., 116 Neb. 740, 219 N.W. 1 (1928);—some affirming an award attacked as inadequate, i. e., Cooper v. Hastert, supra, 124 N.W.2d 387; Forrest v. Masters, supra, 63 N.W.2d 777; Dorsey v. Yost, supra, 36 N.W.2d 574;—and some affirming an award attacked as excessive or unsupported by evidence, i. e., Langford v. Ritz Taxicab Co., 172 Neb. 153, 109 N.W.2d 120 (1961); Kroeger v. Safranek, 165 Neb. 636, 87 N.W.2d 221 (1957); Shields v. County of Buffalo, supra, 71 N.W.2d 701; Moses v. Mathews, 95 Neb. 672, 146 N.W. 920 (1914). But these cases must each be considered on their particular facts—and the prevailing principle found throughout *all* these authorities is that fixing damages is peculiarly a jury function, and its award will be sustained unless shown to indicate prejudice, mistake, or a complete disregard of law and evidence. We are convinced that here the experienced and able trial judge submitted the case to the jury under a proper charge, that the jury performed its function within the confines of its power, and that the trial court did not abuse its discretion in denying appellant's motion for a new trial.

Affirmed.

MEHAFFY, Circuit Judge, dissents.

would have been incurred in maintaining Tommy Lee Wright before he arrived at the age of 21 or until he was married if married before 21."

Appellant took no exception to any portion of the trial court's charge although given an opportunity to do so.

3. Again, appellant made no objection to the form of verdict submitted to the jury.